# THE STATE v. ALBERT KATZ, Appellant.

Division Two, January 4, 1916.

1. CRIME AGAINST NATURE: Embraced by Statute. The statute (Laws 1911, p. 198) declaring that "every person who shall be convicted of the detestable and abominable crime against nature, committed with mankind or with beast, with the sexual organs or with the mouth, shall be punished," etc., makes criminal the act of a man in wickedly and feloniously inserting his sexual organ into the mouth of a woman. Whether or not such · act was at common law included in the general terms "crime against nature" is beside the question in view of the words "with the sexual organs or with the mouth" added to the statute in 1911, which were intended to include . certain acts which the general common-law terms did not embrace, among others the said act.

2. EVIDENCE: Of Collateral Crime. Evidence of a collateral crime which has a logical connection with the crime directly involved and is so linked with it as to constitute it a part of the continuous accomplishment of a fixed and common design, is admissible. So that where defendant is charged with the abominable crime against nature and the evidence shows that, while prosecutrix and a man were seated in a park near midnight they were accosted by defendant and two accomplices, who falsely represented themselves as private detectives, and while the accomplices, under the guise of an arrest, took the man to one end of the park, the defendant forcibly took her to. another part and there ravished her and after forcibly detaining her for sometime inserted his sexual organ in her mouth, evidence that, after the accomplices had returned and they had outraged her in the same way, the three took her to the rear of an abandoned saloon, an hour and a half or two hours after they had first accosted her in the park, and there again assaulted her in the same way, was admissible, to establish a conspiracy and to prove that all that was done was but a part of a fixed, single and common design.

3. ———: ———: Motion to Elect. Nor was it error on the part of the trial court to refuse to compel the State, after the evidence of the second assault was in, to elect upon which assault it would go to the jury.

4. CRIME AGAINST NATURE: Consent as Defense: Instruction. Consent on the part of the woman to the insertion by defendant of his sexual organ in her month is no defense to a charge of the detestable and abominable crime against nature; nor can an instruction which tells the jury that it was immaterial whether

the person so used or abused consented thereto or not, be condemned as unnecessary, or as erroneous, on the ground that, if prosecutrix consented, she was an accomplice, in which event corroboration of her testimony was necessary, in a case in which there is no evidence tending to show consent, and corroboration therefore was unnecessary, and the motion for a new trial contains no specific assignment on the subject.

5. ————: **Incredible Evidence.** Although the facts of a case reveal such a state of degradation and indecency as to challenge credulity, they will not be held to be incredible and opposed to human experience, if prosecutrix's testimony is corroborated and the punishment imposed by the verdict is so moderate as to relieve the jury of every imputation of passion and prejudice; for legislative enactments against crimes against nature and the transcripts of courts attest the fact that such crimes are within human experience.

Appeal from St. Louis City Circuit Court.—*Hon. Kent K. Koerner*, Judge.

AFFIRMED.

*John A. Gernez* for appellant.

(1) Sec. 4726, R. S. 1909, as repealed and re-enacted, Laws 1911, p. 198, does not make the acts alleged in the information or testified to in the evidence a criminal offense. It was not an offense at common law, nor under this statute, nor is there any other statute applicable. (a) In determining the meaning of the words "the abominable and detestable crime against nature," we must have recourse to the common law. In interpreting the criminal statutes, which fail to define the denounced offense, common law definitions of crimes must guide us. State v. Rader, 262 Mo. 129; Potter's Dwarris on Statutes, p. 186; 8 Am. & Eng. Ency. Law, 276; Brandon v. Carter, 119 Mo. 572; United States v. Miss. Freight Assn., 58 Fed. 58; Ex parte Vincent, 26 Ala. 145; Comm. v. Chapman, 13 Metc. (Mass.) 68; State v. Hartley, 185 Mo. 669; State v. Cowley, 67 Vt. 322; Sec. 8047, R. S. 1909. (b) At common law "the detestable and abominable crime

against nature" was clearly and distinctly defined. · It was either sodomy or buggery. The act complained of in the information or proved by the testimony is not included in the term "the detestable and abominable crime against nature." It is neither of these offenses. 1 East's P. C. c. 14, sec. 1; 1 Russell on Crimes, 976-978; 1 Wharton, Cr. Law, sec. 575; 2 Bishop, Cr. Law, 1194; Rex v. Jacobson, Russ. and Ry. 133; People v. Boyle, 116 Cal. 658; State v. Prindle, 31 Tex. Cr. 551; State v. Harvey, 55 Tex. Cr. 199; State · v. Tondexter, 133 Ky. 720; State v. Kennan, 86 Neb. 234; Terr. v. Weaves, 127 Pac. 724; State v. Mitchell, 49 Tex. Cr. 535; McClain, Crim. Law, sec. 1153. (2) Each act of so-called sodomy, testified to by the prosecutrix, constituted a separate, distinct and substantive offense. State v. Palmberg, 199 Mo. 240; State v. Schenk, 238 Mo. 457; State v. Prewitt, 202 Mo. 51; State v. Wilkins, 221 Mo. 444. (a) If the defendant was being tried for the first affair at Benton Park, then all evidence of the second affair at the Cherokee Brewery was inadmissible. State v. Palmberg, 199 Mo. 240; People v. Molineux, 62 L. R. A. 332; People v. Clark, 33 Mich. 112. (b) If the defendant was being tried for the second alleged affair, then probably evidence of the first offense was admissible but it was the duty of the court to properly instruct the jury as to the admissibility and purpose of such testimony. Instruction 7 did not accomplish this and on defendant's special exception to this instruction, a proper one should have been given. (c) Motion of the defendant for an election upon the part of the State was timely and would have remedied many of the errors complained of. Indeed a motion to elect was unnecessary. The State was presumed to proceed on the first case. State v. Prewitt, 202 Mo. 51; State v. Palmberg, 199 Mo. 248; State v. Castro, 113 Cal. 11; People v. Baker, 105 Ill. 452; People v. Jenness, 5 Mich. 457;

State v. Acheson, 91 Me. 240; State v. Richardson, 63 Ind. 192; State v. Schenk, 238 Mo. 457; People v. Williams, 133 Cal. 168; People v. Clark, 133 Mich. 112; People v. Mitchell, 24 Colo. 532. (d) It was error for the court, even if no motion for an election had been made, to submit to the jury two separate and distinct offenses. We cannot tell from the verdict of which of these offenses he was convicted. Cases just above cited and also State v. Washington, 242 Mo. 409. (3) The verdict was not supported by the evidence. "And in proportion as the crime is most detestable, so ought the proof of guilt to be clearest and most undoubted." 1 East's Pleas, chap. 141, sec. 1; 4 Black. Comm., 215; Honselman v. People, 168 Ill. 172. (4) Instruction number 1 is erroneous in the use of the language, "It is not material whether the person so used or abused consented or not." It was unnecessary to give this instruction but as given it is erroneous for it is most important if the victim is a consenting party. If she consented, then she became an accomplice, whose testimony must be corroborated. State v. Wilkins, 221 Mo. 444; Madis v. State, 27 Tex. App. 194; Regina v. Jellyman, 8 C. and P. 604; People v. Miller, 66 Cal. 468; Comm. v. Snow, 111 Mass. 411; People v. Dechessiere, 69 N. Y. App. Div. 217.

*John T. Barker*, Attorney-General, and *Lee B. Ewing*, Assistant Attorney-General, for the State.

(1) The information charges a felony under the statute, Laws 1911, p. 198, and is sufficient. State v. Wellman, 253 Mo. 311; State v. Kelly, 192 Ill. 119; State v. Honselman, 168 Ill. 172; State v. Means, 125 Wis. 650. (2) The court did not err in refusing to compel the State to elect, nor in its instructions numbered 3, 4, 5 and 6. State v. McDonald, 67 Mo. 13; State v. Balch, 136 Mo. 109; State v. Sykes, 191 Mo. 62; State v. Mathews, 98 Mo. 127; State v. Schnettler, 181 Mo.

189; State v. Greenwade, 72 Mo. 299. (3) The evidence was ample to sustain the verdict. State v. Sechrist, 226 Mo. 574; State v. McKinney, 254 Mo. 697. (4) There was no error in the failure of the court to require the State to elect as to the particular offense. There was but one effense. The whole was one transaction. It is clear that appellant and his companions, Gausman and Long, entered into a conspiracy to represent to the prosecutrix and Schonberg that they were detectives, and go through the form of arresting the girl and her companion, and thereby separate them, and then assault the prosecutrix. The conduct of appellant and his companions will admit of no other explanation. In pursuance of this conspiracy, they did pretend to arrest prosecutrix and Schonberg and the latter was taken away by Long and Gausman while Katz assaulted the girl. Then the trio succeeded in getting rid of Schonberg entirely and Long and Gausman each then attacked the girl. Clearly these transactions constituted but one offense. True, each of the men might have been informed against separately and separately tried; but all might also have been convicted for the act of any one of them. State v. Sykes, 191 Mo. 62; State v. Greenwade, 72 Mo. 299. Within a few minutes of the close of the transaction in the park, prosecutrix was then taken by the three men to the saloon at Cherokee and Jefferson streets, two blocks away, and from there to the old Cherokee brewery, at Cherokee and Iowa streets, three blocks further on. During all that time prosecutrix was in the power of appellant and his companions. They either had hold of her, or she was surrounded by them and under their will and control. If appellant and his companion had remained with prosecutrix in the park, and again committed the acts testified to by her in 20 to 30 minutes after the first assaults, clearly it would have been but one continuing offense, notwithstanding there

266Mo.32

were many criminal bestial acts.   Does it in anywise
alter the case, that instead of again committing the
acts near the lake in the park, they took the girl five
blocks away to another place before committing them?
It was all done in pursuance of a formed purpose.   The
parties were never separated.   The interval was but a
few minutes.   The whole was but one continuing trans-
action.   The facts are so related as to constitute but
one offense.   To hold otherwise would be to apply the
linear three-foot rule as the standard by which to de-
termine the propriety of a motion to elect or to dis-
tinguish between different offenses.   The question then
becomes, How many yards apart were the different
transactions?   It is no longer a question of whether
or not the accused has been informed of the charge
against him.   State v. Matthews, 98 Mo. 127; State v.
McDonald, 67 Mo. 13; State v. Sykes, 191 Mo. 62; State
v. Balch, 136 Mo. 109; State v. Schnettler, 181 Mo 189;
State v. Greenwade, 72 Mo. 299.

RÉVELLE; J.—By information filed in the cir-
cuit court of the city of St. Louis it is charged that the
defendant "did wickedly, feloniously, and against the
order of nature, commit the detestable and abomin-
able crime against nature with one Mary Emmenger,
a female person, by then and there wickedly and feloni-
ously inserting and thrusting the sexual organ of him,
the said Albert Katz, into the mouth of her, the said
Mary Emmenger; the said Albert Katz being then and
there a male person."

Defendant was tried and convicted and his punish-
ment assessed at imprisonment in the penitentiary for
a term of two and one-half years.

The State's evidence, in substance, is that about
11 or 11:30 on the night of August 5, 1913, the prosecu-
trix and one Harry Schonberg, who had been acquain-
tances for years, were seated in Benton Park, where

they were accosted by defendant and two companions, Harry Long and Richard Gausman, who falsely represented themselves to be private detectives. Long and Gausman seized Schonberg, and, under the guise of arrest, took him to one end of the park, while defendant forcibly and against her resistance took prosecutrix to the other side of the park, near a lake, and there ravished her. After the act of sexual intercourse was completed he forcibly detained her for sometime and then committed the unnatural crime alleged in the information. He then turned her over and inserted his private parts in her rectum. These transactions consumed about forty-five minutes, and just about the time they were finished Long and Gausman appeared and, in turn, and with the assistance of defendant, assaulted and mistreated the girl in the same manner as had the defendant. Their acts occupied about thirty or forty minutes. After this they took the girl to a saloon about two blocks from the scene of the first assault and there purchased for her a glass of soda. It was then about one o'clock, and from this saloon they proceeded to the rear of an abandoned brewery, about three blocks distant, and there again assaulted her as they had in the park. The evidence discloses that but a very short time elapsed between the occurrences in the park and those at the brewery, in fact only the time required to travel from point to point and stop at the saloon to purchase the soda. After the last assault prosecutrix went to the corner of Cherokee and Jefferson streets and there met an officer to whom she made complaint concerning her mistreatment. While in his company she met another police officer who took her to the police station, and from there to the city dispensary where a physical examination was made. In the presence of the police captain, certain other officers, and the defendant himself, prosecutrix, immediately after arriving at the police station, recited her

story, as heretofore detailed, which was then and there denied by defendant.

The evidence further discloses that when the prosecutrix met the police officers her clothing was soiled and torn. The physician who made the examination testified that "the vagina was excorciated or reddened and irritated inside and around the edges and greatly relaxed; that her rectum was similarly affected, and that her clothing was soiled from vaginal discharge."

On the part of defendant the testimony tends to prove that the defendant was not with the prosecutrix on the occasion testified to, nor was he with her at all in the park or at the brewery. He denied all the statements of the prosecutrix, and offered evidence tending to establish that he was engaged in the performance of his regular duties as a bartender until 12:45 that night. He admitted that immediately after quitting work he saw the prosecutrix and walked with her to a saloon and there got a glass of soda, but denied entirely that he had committed any assault, or that any had been committed upon prosecutrix in his presence.

I. The judgment should be reversed, so asserts defendant, because (1) the information charges no offense; the court (2) admitted improper evidence, (3) erred in its instructions to the jury, (4) should have required the State to elect upon which charge of alleged assault it would stand; and (5) that the evidence is wholly insufficient to sustain the verdict.

It is strongly urged and adroitly argued that the laws of this State do not make criminal the acts charged in the information, but we think **Crime Against Nature.** otherwise and have heretofore so held. [State v. Wellman, 253 Mo. 302.] It would serve no useful purpose to go into the conflicting holdings of other jurisdictions as to whether the act here

charged was at common law included in the general
terms "crime against nature;" because, even were the
negative of this proposition conceded, it would avail
defendant nothing in view of our amended statute. In
the statutes of this State it is written:. "Every per-
son who shall be convicted of the detestable and abom-
inable crime against nature, committed with mankind
or with beast, *with the sexual organ or with the mouth,*
shall be punished," etc.; the words in italics having
been added by amendment in 1911. [Laws 1911, p.
198.] The Legislature surely meant something by this
amendment, and, if so, it evidently was to include cer-
tain acts against nature which the general common law
terms did not embrace, and the acts it had in mind, it
designated. The method denounced by the amend-
ment, and employed in this case, is as much against
nature, in the sense of being unnatural and against the
order of nature, as sodomy, buggery, or any other un-
natural copulation. The original statute gave no
definition of the crime against nature, and it was un-
necessary for the amendment, in order to embrace the
act here charged, to more definitely define the act in
contemplation than it did. As said in Honselman v.
People, 168 Ill. 1. c. 174, "The statute gives no defini-
tion of the crime, which the law, with due regard to the
sentiments of decent humanity, has always treated as
one not fit to be named," and so with the amendment.
Without lengthening the discussion of this loathsome
subject, it is sufficient to say that the act here charged
is within the statute, and that the information fully
and sufficiently advised the defendant of the crime
with which he was charged. [State v. Wellman, 253
Mo. 302; Means v. State, 125 Wis. 650; Honselman v.
People, 168 Ill. 172; Kelly v. People, 192 Ill. 119.]

II. Defendant complains that, after the State
had offered its evidence relative to the assault which

**Evidence of Other Kindred Offenses.** took place in Benton Park, it was not proper to prove the second assault committed at the brewery, and that, after the introduction of the evidence of both assaults, the State should have been required to elect as to the one upon which it would plant itself. The authorities all agree that, as a general rule, evidence of other crimes is inadmissible upon trial of the one charged, but to this there are exceptions, and among these is the one of a collateral crime which has a logical connection with the crime directly involved, or is so linked with it as to show that it is a part of the continuous accomplishment of a fixed and common design. In the cases of State v. Schnettler, 181 Mo. 173, and State v. Spray, 174 Mo. 569, the authorities upon this subject are ably and exhaustively reviewed, and from them it is readily deducible that where two or more offenses are connected under such circumstances as together constitute but a single and continuous accomplishment of a common design, evidence of all is admissible, notwithstanding that in each case the party could be separately indicted and convicted. In the case of State v. Mathews, 98 Mo. l. c. 128, the facts disclosed that after the perpetration of the homicide, and after the accused had left the scene some two hundred yards he shot at another person, and, in holding evidence of the second assault competent, the court said: "The evidence was admissible. The defendant and his companions were going directly from the scene of the homicide, just perpetrated. Greene was going toward it. The defendant's halting him was an act, the character of which not only illustrated the character of the principal act in the tragedy, as part of a system of criminal acts, but so intimately connected with it, as to make it a part of that very transaction, and to identify the defendant as an actor therein." To the same effect is State v. McDonald, 67 Mo. 13; State v. Balch,

136 Mo. l. c. 109; State v. Myers, 82 Mo. 558.   This is
in no degree in conflict with what is said in State v.
Palmberg, 199 Mo. 233, and cases in line therewith.   In
those cases the proof of other and subsequent assaults
was clearly inadmissible as having no logical connec-
tion with the crime under trial, and were not a part
of a continuous and single accomplishment.   The evi-
dence in this case is sufficient to establish a conspiracy
on the part of the defendant and his two companions
(State v. Sykes, 191 Mo. 62), and clearly discloses that
all that was done both at the park and the brewery was
but parts of a fixed, single and common design.   It
was one continuous transaction, and from the moment
that prosecutrix was seized by defendant and her com-
panion taken away by his confederates the girl was
within the power and control of defendant, and he was
continuously using her in the accomplishment of a
single design.   These various acts were committed, one
after the other, in almost immediate succession, and,
no doubt, in pursuance of a common scheme and under-
standing on the part of defendant and his accomplices.
It is our opinion that they were so closely connected
and committed under such circumstances as to make
evidence of the whole transaction competent, and that
it was not error on the part of the court to overrule
defendant's motion to require the State to elect.

III.   What is said in the preceding paragraph dis-
poses of defendant's objections to certain instruc-
tions which were given on the theory that the differ-
ent acts testified to constituted but one continuous
transaction.

Instruction numbered 1 defined the crime with
which defendant was charged, and, among other things,
told the jury that "it is immaterial
whether the persons so used or abused
consented thereto or not."   We do not
understand counsel to contend that the

**Instruction:**
**Consent of**
**Prosecutrix.**

consent of the person so used would constitute any defense, and, of course, it would not; but he insists that this portion of the instruction was unnecessary, and, as given, erroneous, because, if the other person consented, she was an accomplice, in which event corroboration of her testimony was necessary. This assignment is ruled adversely to defendant, because (first) there is not in all this record any evidence tending to establish that the prosecutrix consented thereto, and corroboration was, therefore, unnecessary, and an instruction requiring it would have been improper; and (second) the motion for a new trial contains no specific assignment on this subject. [State v. Conway, 241 Mo. 271; State v. Horton, 247 Mo. l. c. 663; State v. Wellman, 253 Mo. l. c. 316.] (Third) This instruction merely defined the offense for which defendant was on trial, and while perhaps it was unnecessary in this case to instruct the jury that consent was no defense, it cannot be said that the instruction was erroneous, or that it could have resulted in prejudice to the defendant.

IV. It is finally insisted that the evidence upon which this conviction rests is "so incredible, improbable and contradictory, and so opposed to Sufficiency of Evidence. all human experience" that the verdict should not be permitted to stand. As said by this court in State v. Sechrist, 226 Mo. l. c. 582, "That the transcript presents a state of degradation that challenges credulity must be conceded, and yet our statutes on incest and rape attest that these crimes are within the experience of our courts and legislatures." If the facts testified to by the prosecutrix are true, and in many respects she is corroborated by the testimony of disinterested persons, it cannot be said that the evidence is insufficient. The lawful triers of this issue have certified to us the truthfulness of her statements, and their verdict assessing punishment at

only two and one-half years' imprisonment, instead of showing passion and prejudice, evinces that mercy has tempered justice.

The judgment should be affirmed, and it is so ordered. *Faris, P. J.*, and *Walker, J.*, concur.