**STATE of Missouri, Respondent,**

**v.**

**Donald CRAWFORD, Appellant.**

**No. 56468.**

Supreme Court of Missouri,
Division No. 2.

Feb. 22, 1972.

Motion for Further Modification or for Rehearing or for Transfer to Court En Banc Denied April 10, 1972.

John C. Danforth, Atty. Gen., Walter W. Nowotny, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

Joseph Langworthy, Pacific, for appellant.

HOUSER, Commissioner.

Donald Crawford, tried by a jury, was found guilty of the detestable and abominable crime against nature and sentenced to 10 years' imprisonment.

On this appeal defendant first contends that the statute under which he was tried, § 563.230, RSMo 1969, V.A.M.S., is void. That section reads as follows:

"Every person who shall be convicted of the detestable and abominable crime against nature, committed with mankind or with beast, with the sexual organs or with the mouth, shall be punished by imprisonment in the penitentiary not less than two years."

■ Defendant urges that § 563.230 is so vague, indefinite and uncertain that persons of ordinary intelligence cannot tell in advance with any reasonable degree of certainty what actions are within its prohibitions, but must guess or surmise at its meaning and differ as to its application; that it does not on its face set "any ascertainable logical standard as to just what sexual, quasi-sexual, or non-sexual acts, between what persons, of what status, or what degrees of consanguinity, if any, and using just what organs of which sex or sexes, are prohibited with the dead or only with the quick." The statute is said to deprive defendant of his right to demand the nature and cause of the accusation against him; to deprive him of liberty without due process of law and deny him equal rights and opportunities and the equal protection of the laws, under Sections 2, 10 and 18(a) of Article I, Constitution of Missouri 1945, V.A.M.S., and Amendments VI and XIV, Section 1, Constitution of the United States.

■ In passing upon the constitutionality of a statute this Court respects certain well-established rules of construction: A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly and undoubtedly violates some constitutional provision. Hickey v. Board of Education of City of St. Louis, 363 Mo. 1039, 256 S.W.2d 775, 778 [11]. The burden of establishing its unconstitutionality rests upon the party questioning it.

State v. Weindorf, Mo.Sup., 361 S.W.2d 806. In determining the constitutional sufficiency of a statute creating and defining a criminal offense, attacked on the ground of vagueness, the general rule is that it "must be sufficiently explicit, in its description of the acts, conduct or conditions required or forbidden, to prescribe the elements of the offense with reasonable certainty, fix an ascertainable standard of guilt, and make known to those to whom it is addressed what conduct on their part will render them liable for its penalties, and not be so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." 16A C.J.S. Constitutional Law § 580, p. 625, cited and quoted with approval in State ex rel. Eagleton v. McQueen, Mo.Sup. en Banc, 378 S.W.2d 449, 453. Absolute certainty or impossible standards of specificity, however, are not required. The test is "whether the language conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." State v. Smith, Mo.Sup., 431 S.W.2d 74, 78 [2]. In ascertaining whether a person of common intelligence and understanding is sufficiently notified by the language of § 563.230 we may consider not only the expression of legislative intent in the original act prohibiting sodomy and later amendments but also may consider judicial decisions construing and enforcing the sodomy statute. A court's construction of statutory language becomes a part of the statute " 'as if it had been so amended by the legislature.' " Cramp v. Board of Public Instruction, 368 U.S. 278, 285, 82 S.Ct. 275, 280, 7 L.Ed.2d 285; Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840; In re Davis, 242 Cal.App.2d 645, 51 Cal.Rptr. 702, 707 [8]. The statute is regarded as supplemented by reference to prior judicial decisions construing and applying it. Hogan v. State, 84 Nev. 372, 441 P.2d 620, 621; Delaney v. State, Fla. Sup. (1966), 190 So.2d 578 [9]. It must be read as if it incorporates the judicial interpretations placed upon it. Perkins v. North Carolina, W.D.N.C. (1964), 234 F. Supp. 333, 336. The rule of practical construction was recognized in Phillips Pipe Line Co. v. Brandstetter, 241 Mo.App. 1138, 263 S.W.2d 880, where the court said, l.c. 884 [5]: "Our conclusion is buttressed by practical construction since 1919. We are called upon to construe the statute one-third of a century after its enactment, and must take into consideration the comments which have been made by courts (conceding that none have ruled this precise issue), as well as the practical use made of the statute."

Sodomy has been prohibited in this State at least since 1835. RSMo 1835, p. 206, § 7, provided that "Every person who shall be convicted of the detestable and abominable crime against nature, committed with mankind, or with beast, shall be punished by imprisonment * * *." This language served to describe the crime of sodomy and provided the basis for prosecutions for that offense for more than three quarters of a century. In its wisdom the General Assembly in 1911 added to the original language the language below italicized, Laws 1911, p. 198: "Every person who shall be convicted of the detestable and abominable crime against nature, committed with mankind or with beast, *with the sexual organs or with the mouth*, shall be punished, * * *," the obvious intent and purpose of which was to enlarge the common law definition of the crime, better describe the elements of the crime and make more explicit the acts forbidden. For nearly a century and a half (until defendant moved to quash this information) no one raised the point and properly preserved for appellate review in this Court the question of the constitutionality of Missouri's sodomy statute on the ground that it failed to define the offense with sufficient particularity and specificity. While the passage of time does not operate to insulate a statute from attack on constitutional grounds, the fact that no such challenge was made during that long period of time is some indication that there was no lack of understanding of the mean-

ing of the language used; that the public, prosecutors, judges and juries understood the definitions and proscriptions of the statute, and that it was sufficiently definite and certain to be administered as a practicable and workable enactment.

During the past 137 years this Court has reviewed at least twenty convictions under the sodomy statute as originally enacted and as amended, refining and developing a body of law on the subject, clarifying what is prohibited by the statute, by which it has been adjudicated that § 563.230 embraces sodomy proper, bestiality, buggery, fellatio (oral genital contact) and cunnilingus (oral vaginal contact); "that is, any unnatural corporeal copulation." See State v. Oswald, Mo.Sup., 306 S.W.2d 559, 562. For centuries persons of ordinary intelligence in the English-speaking community have known and understood what is meant by "the detestable and abominable crime against nature." Blackstone referred to it as the "infamous crime against nature" and stated that the English law treated it as "the horrible crime not to be named among Christians." Blackstone's Commentaries on the Laws of England, Lewis's Edition (1900), Vol. 4, Ch. 14, *215, p. 1612. As we have seen it has been recognized by that name from the earliest times in Missouri, and by legislative amendment and judicial construction has received a relatively clear definition. We are of the opinion that the language of the sodomy statute, as amended in 1911, in context, and as spelled out by judicial construction, and the commonly understood meaning of the euphemism "the detestable and abominable crime against nature," conveys to a person of common intelligence and understanding, and to the public at large, an adequate description of the acts which are prohibited, and fixes an ascertainable standard of guilt within the requirements of the constitutional provisions invoked. Louisiana v. Bonanno, 245 La. 1117 (1964), 163 So.2d 72 [2]; State v. White, Sup.Jud.Ct. of Me. (1966), 217 A.2d 212 [2]; People v. Dex-ter, 6 Mich.App. 247 (1967), 148 N.W.2d 915; People v. Gann, 259 Cal.App.2d 706 (1968), 66 Cal.Rptr. 508 [3]; Hogan v. State, 84 Nev. 372 (1968), 441 P.2d 620 [3]; Gilmore v. People, Col.Sup. (1970), 467 P.2d 828 [2]. In Hogan, after holding that the infamous crime against nature statute, as supplemented by court decisions, make the meaning and scope of the offense clear, the court said: "It should be noted that this court is not unique in this interpretation of the infamous crime against nature. At least twenty-one other states define it similarly. See 2 Wharton's Criminal Law and Procedure, § 752, pg. 575. The phrase 'infamous crime against nature' indicates an offense against nature and the laws of nature, and is as inherently understandable as are such words as 'robbery', 'larceny', 'burglary', and even 'murder.' All are 'words of art' disclosing their full meaning through interpretation, usage and application." 441 P.2d l.c 621–622 [2]. "To meet the test of constitutionality it is not necessary that the statute describe the loathsome and disgusting details connected with each and every way in which 'unnatural carnal copulation' may be accomplished." Louisiana v. Bonanno, supra, 163 So.2d l.c. 74 [2].

In Harris v. State, Alaska Sup., 457 P.2d 638, relied upon heavily by defendant, the Alaskan Supreme Court held that the term "crime against nature" in its sodomy statute was void for vagueness but, as the Alaskan court acknowledged, the term "crime against nature" had never been construed or applied authoritatively in Alaska—there was no prior "judicial gloss of the statutory term 'crime against nature' by which to rescue it from the realm of nebulosity." 457 P.2d, l.c. 644.

 Whether the statute could be applied to onanism, "anilingus," acts between spouses, sexual intercourse for pleasure using birth control devices, a man kissing his wife's breasts, etc. (questions posed in defendant's brief) are not questions confront-

ing us on this appeal. Whether activities of a nature different from those charged against defendant might or might not constitute an offense under § 563.230 are questions the answers to which cannot aid appellant. Defendant "may not espouse the cause of others differently situated as a defense in a prosecution where the statute clearly applies to him." State v. Weigold, 281 Minn. 73, 160 N.W.2d 577, 580.

■ Defendant also contends that the specifications in the information do not fall within the prohibitions of the statute. The information, after specifying date and place, charged that defendant "did then and there wilfully, unlawfully and feloniously commit the detestable and abominable crime against nature with one [naming a person], a male person, by inserting the male sex organ of Donald Crawford into the mouth of the said [named person], contrary to the form of the Statute * * *." At least five cases have specifically held that the act charged is within the statute. State v. Katz, 266 Mo. 493, 181 S.W. 425; State v. Pfeifer, 267 Mo. 23, 183 S.W. 337; State v. Hubbard, Mo.Sup., 295 S.W. 788; State v. Villinger, Mo.Sup., 237 S.W.2d 132; and State v. Oswald, Mo.Sup., 306 S.W.2d 559. We confirm and reannounce the ruling in those cases. In view of the clear and unambiguous language of the charge it is indisputable that defendant was fully apprised in unmistakable language of the precise nature of his alleged misconduct.

None of the other alleged procedural errors demonstrates reversible error.

■ In empaneling the jury defendant was not entitled to twelve peremptory challenges under § 546.180, RSMo 1969, V.A.M.S., and was not entitled to thirty jurors on the panel under § 546.210, RSMo 1969, V.A.M.S., as those statutes were interpreted in State v. Naylor, 328 Mo. 335, 40 S.W.2d 1079, which ruling we reaffirm.

■ There was no error in refusing defendant's request for an instruction on the subject of the need of corroboration of the testimony of an accomplice. An accomplice is "one who knowingly, voluntarily, and with a common interest with others participates in the commission of a crime either as a principal or as an accessory before the fact." 21 Am.Jur.2d Criminal Law § 118, p. 196. The uncontradicted testimony in this case shows that the victim of this crime was an unwilling participant by sufferance as a result of the application of physical force and the making of threats and therefore he was not an accomplice.

■ There was no error in overruling defendant's objection to the competency of the State's witness to testify. The witness was 16 years old, and therefore the burden was on defendant to show incompetence. State v. Statler, Mo.Sup., 331 S.W.2d 526. No showing was made that the witness did not have present understanding of or intelligence to understand, on instruction, an obligation to speak the truth. Defendant introduced no evidence that the witness was incompetent to testify. One of defendant's witnesses testified that she had never heard anything about the witness to lead her to believe that he was any more untruthful than any other child. While there was evidence that his I.Q. was in the 67–69 range this alone would not disqualify him from testifying. The answers he gave to questions asked about the crime indicate that he had the mental capacity at the time of the occurrence in question to observe and register the occurrence, to recall independently the observations made and the capacity to translate truly into words the memory of his observation. He testified as to names, places, dates, and school. He graphically recounted the circumstances under which he was required to submit to the offense. It may not be said from reading his testi-

**320**

mony that he was confused. He did not waver from his story on cross-examination. The court did not abuse its discretion in allowing him to testify.

The court did not err in overruling defendant's objection to the following portion of the prosecutor's final argument to the jury: "A society, a community only gets the type of law enforcement that it wants and you gentlemen are the Society. You are going to decide in this case whether this community wants this type of conduct going on and whether you want this type of man to be walking the streets and—."

Defendant claims this was a veiled reference to the desirability of keeping the defendant off the streets as a precaution for the safety of others. This is a forced inference. There was no suggestion of personal danger to the jurors or the members of their families if defendant was acquitted; nothing to arouse personal hostility on the part of the jurors. We construe the statement as a permissible call for law enforcement and discouragement of this type of crime, and find the argument unexceptional.

Judgment affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

MORGAN, P. J., HENLEY, J., and SMITH, Sp. J., concur.

DONNELLY, J., concurs in result.