STATE of Missouri, Respondent,

v.

Brianne **HAMPTON**, Appellant.

No. 64758.

Supreme Court of Missouri,
En Banc.

June 30, 1983.

Edward J. Murphy, Butler, for appellant.

John Ashcroft, Atty. Gen., Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, for respondent.

BILLINGS, Judge.

Defendant Brianne Hampton was fined $1.00 and ousted as Clerk of the Circuit Court of Cass County on each of five counts of mishandling of monies coming into her hands as clerk, in violation of §§ 483.075 and 483.165, RSMo 1978.[1] We affirm.

---

1. Section 483.075 in pertinent part provides: "Every clerk shall ... keep a perfect account of all moneys coming into his hands on account of costs or otherwise, and punctually pay over the same."

Section 483.165 provides: "If any clerk shall knowingly and willfully do any act contrary to the duties of his office, or shall knowingly and willingly fail to perform any act or duty re-quired of him by law, he shall be deemed guilty of a misdemeanor in office."

Section 483.195 provides that in the event a clerk is found guilty of misdemeanor in office "he shall be removed from his office, and be fined at the discretion of the court in any sum not exceeding one thousand dollars ...."

Section 556.016(3) states a crime is a misdemeanor "if it is so designated or if persons convicted thereof may be sentenced to impris-

Defendant was charged by an amended information in five separate counts of violating §§ 483.075 and 483.165, punishable upon conviction under § 483.195. The counts are identical except for the amounts of money involved during the five months of November and December, 1980, and January, February and March, 1981. Defendant was accused of committing "the infraction of misdemeanor in office" in that she "did willfully and knowingly fail to keep a perfect account of the monies coming into her hands as Circuit Clerk of Cass County, Missouri, by removing [designated amount of money] in cash from the funds of the Circuit Clerk's Office without making any official or authorized record reflecting any such transactions."

The facts giving rise to the charges and convictions are not in dispute. Cash paid into the clerk's office for filing fees, court costs, and child support payments was placed in a money bag kept in the office. Defendant and her deputies customarily removed cash from the bag for personal use and placed an I.O.U. in the bag for the money removed. Defendant was the biggest user of the bag money, sometimes putting an I.O.U. in the bag, sometimes her personal check—and sometimes neglecting to put either in the bag. At the end of the month and prior to the monthly deposit of the funds, money was collected from the "borrowers" to reimburse the bag for cash earlier removed. On at least two occasions defendant's personal checks to reimburse the bag "bounced". However, the amounts deposited in the account ended up tallying with the monies defendant's office had received throughout the month. The I.O.U.'s were destroyed each month. No records were kept to show who removed cash, the amount removed, when it was removed, or when and who replaced it.[2] The sums of $364.66, $349.50, $655.00, $445.00, and

$847.00 were borrowed from the bag during the five months involved here.

Defendant contends: that because she eventually deposited funds in the bank totalling the same amount paid into her office for filing fees, costs and child support payments,[3] earlier in each month, she did not violate her statutory duty to keep a *perfect account* of monies coming into her hands; that the law does not define *perfect account;* that the statutes defining her duties and penalties for violating the same are so vague and indefinite as to violate due process; that the amended information was fatally defective; and, the prosecutor's reference to Watergate and Abscam during jury argument was inflammatory and prejudicial.

▮ The word "account", as used in financial matters, normally means a "precise list or enumeration of monetary transactions."[4] "Perfect" is defined as "lacking nothing essential to the whole; complete of its nature or kind—without defect—flawless."[5] We do not deem it necessary to resort to dictionary terms to conclude that the plain and ordinary meaning of the term *perfect account* embraces a complete and accurate record of the monetary transactions of the clerk's office and precludes and forecloses the borrowing or use of such funds by defendant and her employees during the period between receipt and deposit. And, consequently, by no stretch of the imagination can it be said that defendant was keeping a *perfect account* of the monies coming into her hands when she and her employees were freely removing and borrowing funds belonging to others. As legal custodian and trustee of the funds, it is no answer, as defendant contends, that because her books ultimately balanced she did not violate the statutory requirement

onment for a term of which the maximum is one year or less."

Section 556.021(1) states that an offense constitutes an *infraction* "if it is so designated or if no other sentence than a fine, or fine and forfeiture or other civil penalty is authorized upon conviction."

2. Ordinarily the I.O.U. reflected the amount removed and the "borrower".

3. Section 452.345 provides that maintenance or support payments are made to the clerk as *trustee.*

4, 5. American Heritage Dictionary, 1981.

that she keep a *perfect account* of the monies coming into her hands. The commingling of personal funds and removal of monies belonging to others in the haphazard and makeshift manner shown by the testimony, clearly demonstrates defendant failed to keep a *perfect account*.

In *Antoine v. McCaffery,* 335 S.W.2d 474 (Mo.App.1960), the court, in considering the question of a school board member's misuse of funds and rejecting his argument that no monetary loss occurred, said at 489:

There is another equally compelling reason the question of monetary loss is not necessarily related to whether the acts complained of constitute gross misconduct. To so rule would interpret the public trust of elected officials at least primarily, if not solely, in the light of the pecuniary results of that official's actions. The constituents of any elected official are entitled to far more from that official than conduct which amounts to requiring him to act solely as a custodian of their funds. It is not difficult to bring to mind acts which even though they result in monetary gain to the public funds could amount to, in certain circumstances, gross misconduct. It is not the result of the actions complained of which the law looks to, in order to determine gross misconduct; it is to the actions themselves. To hold otherwise would compel the people to wait upon results before they sought to protest the actions taken. It would open the door to all sorts of evasive maneuvers and fictitious schemes to hide the monetary gain of the official. The lack of monetary loss, assuming for the moment there was a lack of it, must never be considered in the light of 'excuse' or 'justification.'

■ Further, the condemnation of the court in *Antoine* of diversion and replacement of public funds is equally applicable to the "borrowings" by defendant and her employees in this case. The Court said at 489–90:

Moreover, whether it consists of bond issue moneys, special levies, or other regularly collected tax moneys, a public fund is not to be regarded by those impressed with its control as a sort of bank, from which money can be diverted or withdrawn from time to time, subject only to its being replaced. The thunderous negative reply that would come from the very employees of the Board who, impliedly at least, approved of the respondent's actions, should some citizen from off the street having no connection with the Board request the loan of a considerable sum of money from public funds for several weeks or for any time whatsoever is obvious.

Defendant contends that under the holding of *State v. Crawford,* 478 S.W.2d 314 (Mo.1972), § 483.075 is so vague and indefinite as to violate due process. In *Crawford,* this Court held that "In determining the constitutional sufficiency of a statute ... attacked on the ground of vagueness ... the test is 'whether the language conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' *State v. Smith,* Mo.Sup., 431 S.W.2d 74, 78[2]." 478 S.W.2d at 317.

■ A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly and undoubtedly violates some constitutional provision. *Hickey v. Board of Education of City of St. Louis,* 363 Mo. 1039, 256 S.W.2d 775, 778 (Mo.1953). The burden of establishing its unconstitutionality rests upon the party questioning it. *State v. Weindorf,* Mo.Sup., 361 S.W.2d 806 (Mo.1962).

■ We are of the opinion that the term *perfect account* constituted a sufficient warning that the unauthorized removal and personal use of the funds in question was clearly impermissible and contrary to the requirement she keep a perfect account of the funds.

■ Defendant avers the comment by the prosecutor to Watergate and Abscam during closing argument was highly prejudicial and justified a mistrial. The declaration of a mistrial is a drastic remedy and should be exercised only in extraordinary

circumstances. *State v. Pruitt,* 479 S.W.2d 785 (Mo. banc 1972). "A prosecuting attorney is generally permitted considerable latitude in arguing the necessity of law enforcement and the responsibility resting on juries." *Id.* at 790. The trial court also has broad discretion as to the latitude to be permitted in counsel's closing arguments. *State v. Wright,* 515 S.W.2d 421 (Mo. banc 1974). This Court will not reverse the trial court's ruling on the propriety of counsel's argument unless there has been a clear abuse of discretion. *State v. Jewell,* 473 S.W.2d 734 (Mo.1971); *State v. Hooker,* 536 S.W.2d 487 (Mo.App.1976). We do not believe the prosecutor's argument in this case overstepped the bounds of propriety as to warrant reversal and the court's ruling did not amount to an abuse of discretion.

We find no merit in defendant's attack upon the amended information. While § 483.165 describes the failure of a clerk to perform statutory duties as a "misdemeanor in office", the punishment for such is limited by § 483.195 to removal from office and a fine not to exceed $1,000.00. Pursuant to § 556.021(1), the offense is described as an infraction because the sentencing is limited to fine, forfeiture or other civil penalty upon conviction.

■ Rule 19.08 provides that the procedure for the prosecution of an infraction "shall be the same as the procedure for the prosecution of misdemeanors." The amended information substantially complied with Rule 23.01. There is no doubt defendant knew exactly what she was charged with and we hold it was legally sufficient.

The trial court judgment is affirmed.

RENDLEN, C.J., HIGGINS, GUNN, BLACKMAR and DONNELLY, JJ., and PUDLOWSKI, Special Judge, concur.

WELLIVER, J., not sitting.