FOURNET, Chief Justice.
 

 The defendant, Peter Bonanno, charged in a Bill of Information with having, in Orleans Parish, on June 15, 1962, had “unnatural carnal copulation” with one Daniel Peter Brennan, is appealing from his conviction and' sentence thereunder to 'serve three years at hard labor in the state pen-.
 
 *1120
 
 itentiary, relying for the reversal thereof on three bills of exceptions reserved during the course of the trial when the judge overruled his motion to quash the information, for a new trial, and in arrest of judgment, the basis of all three being that the statute under which he is charged, Article 89 of the Louisiana Criminal Code of 1942, now R.S. 14:89, is unconstitutional in that it is ■ so vague and indefinite, particularly with respect to the phrase “unnatural carnal copulation,” that the courts are called upon to supply this definition, and, in so doing, usurp the function of the legislative branch of the government, in contravention of'Section 2 of Article II of the Constitution of Louisiana for 1921.
 

 Article 89 appears in Section “D” of Chapter 2 of the Criminal Code, the latter being headed “Sex Offenses Affecting the Family,” and the former bearing the title “Crime Against Nature.” Insofar as pdrti'nent here, the article provides: “Crime against nature is the unnatural carnal copulation by a human being with another of the same or opposite sex or with an animal. Emission is not necessary, and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute, the crime.” .
 

 The “crime against nature” has been denounced as' an offense in Louisiana since the adoption' of Act No. 50 of. 1805,: commonly, known as the Crimes Act of 1805. . Section. 2 of this act provides: “That every person who shall hereafter be duly convicted of * * * the detestable and abominal crime against nature, committed with mankind or beast, shall suffer imprisonment at hard labor for life.” Section 33 of this same act sets out that all crimes, offenses, and misdemeanors mentioned and named in the act were to be taken, intended, and construed according to, and in conformity with, the common law of England. All subsequent amendments and revisions retained these same provisions in essence (Section 5 of Act 120 of 1855 and Section 73 of Act 121 of that same year; Sections 788 and 976 of the Revised Statutes of 1870), no re-enactment varying this early definition and penalty in any substantial degree until the legislature of 1896 added to Section 1 of its Act No. 69 the below underscored portion of the amended statute, which then read as follows: “Whoever shall be convicted of the detestable and abominable crime against nature, committed with mankind or beast
 
 with sexual organs, or with the mouth,
 
 shall suffer imprisonment at hard labor for
 
 not less than two years and not more than ten years.”
 
 The next change in the language denouncing this act as a crime was made in Article 89 as incorporated in the Criminal Code of 1942, and carried over into the Revised Statutes of 1950 as R.S. 14:89, which is as above quoted.
 

 As against the contention, made for the first time in 1.882 in State v. Williams, 34
 
 *1122
 
 La.Ann.
 
 87, that
 
 the pertinent statute (Section 788 of the Revised Statutes of 1870) did not define the crime, or any crime known to the common law, the court held it was known to the common law by the convertible and equivalent names of “crime against nature,” “sodomy,” and “buggery,” concluding that “The euphemism by which the law describes pecatum illud horrible, does not, in our opinion, leave its meaning doubtful or obscure.”
 

 When the constitutionality of the 1896 act was attacked in 1900 in State v. Vicknair, 52 La.Ann. 1921, 28 So. 273, the court, in refuting this claim, pointed out that “Some criticism is indulged in concerning the word ‘sexual’ as thus used, but the purpose of the law would have been as well accomplished if it had been left out entirely, and the statute had read ‘crime against nature committed with mankind or beast, * * * with the mouth’; though, no doubt, it must appear that the sexual organ of the one party or the other, either the agent or the pathic, was used, since
 
 the crime * * * is a 'carnal copulation by human beings with each other against nature or with a beast¡
 
 ” citing 2 Bishop New Criminal Law 1191. Although this decision was criticized in State v. Long, 133 La. 580, 63 So. 180, and another attempt, there made to have the 1896 statute declared, unconstitutional, the court again maintained, its validity in the light of the history of the crime. (The emphasis has been supplied.)
 

 We are in full accord with the contention made by defense counsel that a. statute should be so definite and specific as. to the conduct which is prohibited that a. reasonable man will not be compelled to-speculate at his peril whether a statute permits or prohibits the act or acts he proposes to undertake. If the language of a. statute is so variable, vague, or uncertain that it does not plainly set out a crime, then the statute is a nullity.
 
 [1]
 
 However, a statute does not fail to satisfy constitutional requirements merely because it uses general', terms when these so define the offense as: to convey to a person of ordinary understanding and intelligence an adequate description of the prohibited act or acts.
 
 [2]
 

 The legislature in denouncing “crime-against nature” under the definition as set
 
 *1124
 
 out in Section 89 of its Act No. 43 of 1942, adopting the Louisiana Criminal Code, did so for the obvious purpose of amending and further enlarging the common law definition 'of this crime and making its provisions more explicit and comprehensive. As thus amended and redefined it is couched in language that an ordinarily reasonable man can well understand.
 

 The phrase “unnatural carnal copulation” that counsel points to in particular .as being of obscure, vague, and indefinite meaning consists of words of common usage and indicate with reasonable clarity the kind and character of conduct the legislature intended to ■ prohibit and punish. These words all have a well defined, well understood, and generally accepted meaning i. e., any and all carnal copulation or sexual joining'and coition'that is devious and abnormal because it is contrary to the natural traits and/or instincts intended by nature, and therefore does not conform to the order ordained by nature. To meet the test of constitutionality it is not necessary that the statute describe the loathsome and disgusting details connected with each and every way in which “unnatural carnal copulation” may be accomplished.
 

 We therefore conclude that the attack on the constitutionality of R.S. 14:89 is without merit.
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 McCALEB, J., concurs in the decree.
 

 [1]
 

 . State v. Comeaux, 131 La. 930, 60 So. 620, State v. Truby, 211 La. 178, 29 So.2d 758; State v. Christine, 239 La. 259, 118 So.2d 403; United States v. Reese, 92 U.S. 214, 23 L.Ed. 563; and the authorities therein cited.
 

 [2]
 

 . State v. Milford, 225 La. 611, 73 So.2d 778; State v. Marsh, 233 La. 388, 96 So. 2d 643; State v. Hightower, 238 La. 876, 116 So.2d 699; State v. Robertson, 241 La. 249, 128 So.2d 646; and the authorities therein cited. See, also, Jaquith v. Commonwealth, 331 Mass. 439, 120 N.E.2d 189, and Berryman v. State, Okl.Cr., 283 P.2d 558, certiorari denied by the United States Supreme Court, 350 U.S. 878, 76 S.Ct. 141, 100 L.Ed. 775.