In its reasons for judgment of November 27, 1970, the trial court concluded:

"The Court is of the opinion that having held, as it has herein, that the City's contention that they are in compliance with the Orders of this Court are without merit, failure to comply with the Court's Orders, or to have such Orders (and Judgments) modified or changed by appeal, or through other proceedings, within the next ninety (90) days, would place the City in 'wilful' contempt of such Orders. Upon a showing so made hereafter, and after a Rule for Contempt is filed, the Court would then be authorized to proceed in accordance with the provisions of C.C.P. Article 227 and La. R.S. 13:4611."

In every respect, except actually finding the city in contempt, the Court of Appeal affirmed the trial court. It reversed the contempt decree and remanded the case to the trial court "to fix a reasonable period of time for defendants to comply with the judgments of July 11, 1969, after which, should they fail to comply, further contempt proceedings may be invoked as authorized in LSA–C.C.P. arts. 225, 226, 227, and LSA–R.S. 13:4611." (260 So.2d at 788).

We agree with the plaintiffs that the judgments of the district court and the ruling of the Court of Appeal are substantially the same. Consequently, the judgment of the Court of Appeal in each case (No. 494–226, No. 494–227 and No. 494–228) is affirmed. The costs in suit No. 494–226, the vacation case (No. 52511 in this court), are to be borne by the plaintiffs; the costs in No. 494–227, the longevity case, and No. 494–228, the minimum pay case (No. 52519 in this court), are to be borne by defendants.

269 So.2d 204

**STATE of Louisiana**

v.

**Huey P. GAUTHIER.**

**No. 52427.**

Nov. 6, 1972.

William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Cheney C. Joseph, Jr., Sp. Counsel for the State, Baton Rouge, for plaintiff-relator.

J. St. Clair Favrot, Baton Rouge, for defendant-respondent.

McCALEB, Chief Justice.

The defendant, Huey P. Gauthier, was charged by information with violation of R.S. 14:329.6 "in that he did intentionally oppose and resist a lawful curfew established by the Mayor-President for the City of Baton Rouge and the Parish of East Baton Rouge in a time of great public crisis and emergency." He moved to quash the bill on the ground it fails to charge an offense punishable under a valid statute since the Mayor-President of Baton Rouge was without authority to issue the orders establishing a curfew. The trial judge sustained the motion and quashed the information. The district attorney then applied here and we granted this remedial writ under our supervisory jurisdiction.[1]

Insofar as pertinent here, R.S. 14:329.6 provides that "During times of great public crisis, disaster, rioting, catastrophe or similar public emergency within the territorial limits of any municipality or parish * * * and upon a finding that the public safety is imperiled thereby, the *chief executive officer* of any political subdivision * * * *may request* the governor to proclaim a state of emergency within any part or all of the territorial limits of such local government. *Following such* proclamation by the governor, and during the continuance of such state of emergency, the *chief law enforcement officer* of the political subdivision affected by the proclamation *may,* in order to protect life and property and to bring the emergency situation under control, *promulgate orders* affecting any part or all of the territorial limits of municipality or parish" within the limits specifically set out in the statute. (The emphasis is supplied.)

As stated in its written brief "The State's position is simply that Act 176 of 1969 (La.R.S. 14:329) did not explicitly define the term 'chief law enforcement officer.' Obviously aware of the diversified forms of municipal government existing in this State, the legislature recognized the fact that the title held by the chief law enforcement officer within a political subdivision might vary. It is submitted that the Mayor-President of East Baton Rouge Parish should qualify as an individual to whom the term 'chief law enforcement officer' should apply."

The contention is unimpressive. Had the legislature intended that the Mayor-President could promulgate the orders as well as request issuance of the proclamation, there would have been no need for it to designate another official, i. e., the chief law enforcement officer, as the one authorized to do so.

1. Section 10 of Article VII of the Constitution.

There was, further, no need to define just who is the chief law enforcement officer in the political subdivision, for those whose duty it is to preserve the peace and maintain order are universally considered to be the law enforcement officers. The chief law enforcement officer, therefore, is the head of the law enforcement division. In the City-Parish Charter of Baton Rouge and the Parish of East Baton Rouge,[2] the Mayor-President is specifically designated the "Chief *Executive* Officer of the Parish and City." And, although he is given authority to appoint the chief of police, a mere reading of the duties assigned to him show his work is that of an administrative executive officer only. He is given no law enforcement authority whatsoever. (The emphasis is supplied.)

Instead, the charter designates the chief of police appointed by the Mayor-President as the head of the police department, and this department is "responsible within the city limits for the preservation of public peace and order, the prevention of crime, the apprehension of criminals, the protection of the rights of persons and property, and the enforcement of the laws of the state and the ordinances of the parish and city councils." The charter also specifically provides that the chief of police shall be in direct command of the "Police Department."

■ In an effort to establish that in such situations the chief *executive* officer of Baton Rouge is considered by the Parish Council of East Baton Rouge Parish (the "governing body" of the parish) to be the chief *law enforcement* officer as well, the state has offered in evidence an ordinance adopted by the council which not only gives the executive officer authority to proclaim an emergency, but also the power to promulgate all necessary orders in connection therewith. Whatever the intent of the council in enacting this ordinance, adopted in April of 1968, insofar as it conflicts with the provisions of R.S. 14:329.6, adopted by the legislature in 1969, it has been superseded and rendered ineffective.

■ It is hornbook law that criminal enactments are strictly construed; consequently, since under this statute the chief executive officer of the Parish of East Baton Rouge is clearly not the chief law enforcement officer, the trial judge correctly quashed the information.

For the reasons assigned, the judgment is affirmed.

2. Although neither the state nor the defendant filed a copy of the charter in evidence, we find in the records of the court, when the constitutionality of the charter was challenged in State v. City of Baton Rouge, 215 La. 315, 40 So.2d 477, a copy thereof certified by the Secretary of State to be true and correct.