283 So.2d 690 (1973)
Cyrus J. SEVIN et al.
v.
LOUISIANA WILDLIFE AND FISHERIES COMMISSION et al.
No. 53737.
Supreme Court of Louisiana.
October 4, 1973.
Rehearing Denied October 26, 1973.
*691 Peter E. Duffy, Metairie, for defendants-appellants.
John M. Holahan, New Orleans, for intervenors-appellants.
Gerald F. Lofaso, Houma, for plaintiffs-appellees.
Keith Whipple, Gerald A. Bosworth, Charley J. Schrader, Jr., Houma, for intervenors-appellees.
BARHAM, Justice.
Twenty-one named appellees, allegedly representing a class including shrimpers, trawlers, dealers, processors, and canners engaged in the taking, possessing, processing, transporting, buying and selling of salt water shrimp, filed suit to declare unconstitutional R.S. 56:498, the shrimp count law, and to enjoin its enforcement by the Louisiana Wildlife and Fisheries Commission, its agents and employees.
In their original petition the appellees claimed that the statute was contrary to the Louisiana Constitution in that it was (1) vague, general and uncertain; (2) susceptible to many interpretations and constructions; and (3) did not establish an ascertainable standard by which persons may be guided in determining whether or not their actions were within the scope of the statutes.
Appellees particularized the purported Louisiana Constitutional violation in their amended supplemental petition. In brief and argument they base the constitutional attack on La.Const. Art. 1, Sec. 2 (the due process clause of the State Constitution), Art. 1, Sec. 10 (the right to be informed of the nature and cause of accusations); and *692 the 5th and 14th Amendments of the United States Constitution.
Defendant-Appellant, Louisiana Wildlife and Fisheries Commission, and Intervenors-Appellants, Louisiana Shrimp Association, Emory Green, Tom Steed, Steed's Feed Company, Inc. and Gulf Seaway Seafoods, Inc., responded with exceptions to the jurisdiction of the Court over the subject matter involved, alleging that the plaintiffs-appellees were attempting to enjoin a criminal statute without having alleged or proved the necessary circumstances, to-wit, (1) a property right threatened; (2) a manifestly unconstitutional statute; and (3) irreparable injury. The exceptions were overruled and after the trial of plaintiffs' rule nisi, the trial court granted the preliminary injunction requested, declaring the statute unconstitutional. As part of its judgment the lower court dismissed the intervention of the Louisiana Shrimp Association. From the judgment rendered appellants prosecute the instant appeal. La.Const. Art. 7, Sec. 10(2).
The appellants, hereinafter referred to as Louisiana Wildlife and Fisheries Commission, assign two errors in the ruling of the trial court, i.e., the lower court erred in (1) granting a preliminary injunction, and (2) in declaring R.S. 56:498 unconstitutional.
We hold that the trial court erred in declaring the statute unconstitutional; therefore, the first specification of error need not be considered, since the preliminary injunction falls upon our holding that the statute contested is constitutional.
R.S. 56:498 provides:
§ 498. Size limit
No person shall take or have in possession any salt water shrimp which average more than 68 specimens to a pound except during the spring open season defined in R.S. 56:497A when there shall be no limitation as to count, and from November 15 to December 20 when there shall be no limitation as to count on the brown, or Brazilian-type shrimp (Penoeus aztecus). This restriction does not apply to "Sea bobs" (Xiphopeneus kroyeri), also called "six barbes" which may be taken or sold through commercial channels in any season only in outside waters. There shall be no size limit on bait shrimp taken in the manner prescribed in R.S. 56:497B and R.S. 56:500. As amended Acts 1958, No. 53, § 5; Acts 1962, No. 452, § 4.
This section is one of a group of statutes concerned with licensing of shrimp fishermen, defining of inside and outside waters for salt water shrimp, setting standards and seasons for shrimping, as well as providing penalties for violation of the statutes.
Appellees' attack upon this single section disregards the total regulatory scheme and considers the section out of context. Appellees' major attack is the vagueness, ambiguity, and indefiniteness of this section in defining criminal conduct in the following particulars: (1) salt water shrimp taken in outside waters may be controlled because they are necessarily possessed in inland waters en route to processors; (2) the section fails to specify the state or condition of the salt water shrimp which cannot be taken or possessed; (3) that it fails to set forth a procedure for ascertaining the "average specimens of shrimp to a pound", (4) that "bait shrimp" are not defined, and (5) that the section fails to set any limitation upon those who cannot possess salt water shrimp (presumably a housewife who had bought them from a processor could be in violation of the statute.)
Basically, the scheme of R.S. 56:491 to R.S. 56:513 is to control, through licensing and seasons, the commercial taking of salt water shrimp from inside waters. We cannot and do not test the wisdom of the legislature in reasoning how and why to exercise this control. It appears that salt water shrimp in outside waters, i. e., waters off the coast of Louisiana, *693 in the Gulf of Mexico, are by nature larger shrimp; shrimp breed in inland waters and when the young are sufficient in size to live in outside waters, they will migrate to those waters. The State, for economic, conservatory, or other reasons, has determined that it is necessary to control inland shrimping for salt water shrimp.
R.S. 56:498 comes in context when read with the other provisions regulating shrimping. R.S. 56:497 provides in part (A): "No person shall take, have in possession, sell or offer for sale any salt water shrimp taken from inside waters except in open seasons as herein below described: * * *." (Emphasis here and elsewhere supplied.)
Part (B) provides: "Salt water shrimp legally taken and processed within the state, may be bought and sold at any time. Salt water shrimp in their fresh state, legally taken during the open seasons in inside waters, may be possessed for five days following the last day of each open season."
R.S. 56:500 provides:
"No person shall use a shrimp seine or trawl unless an annual license fee has been paid thereon to the Louisiana Wild Life and Fisheries Commission as follows: * * *" (There follow standards for collecting license fees.) "Any sports fisherman may in open waters in open seasons use a trawl not to exceed sixteen feet without payment of license, provided the shrimp taken with such trawl are used for bait or for his own consumption and are not sold, traded, or otherwise permitted to enter into commerce and shall not exceed one hundred pounds in the aggregate at any one time per day to each boat irrespective of the number of persons thereon."
R.S. 56:497(B) supra, also provides:
"Bait shrimp may be taken in inside waters during the closed seasons, but only in cast nets, dip nets with a diameter not to exceed three feet operated only by hand without any mechanical device * * *."
When all of the statutes dealing with shrimp are read in pari materia, it becomes clear that appellees' arguments are without merit. The argument that shrimp taken in outside waters and brought through inside waters for processing makes the shrimper with shrimp taken in outside waters subject to prosecution under R.S. 56:498, is obviously not so, for only the taking and possession of "inside" shrimp is controlled by that section. As to appellees' argument that they cannot ascertain in what state or condition the shrimp must be when they are checked to determine the number of specimens to the pound, it is again very clear that the statutes propose to regulate "shrimp in their fresh state," as taken from the waters and taken for the purpose of placing them in commerce, by those required to be licensed.
As to the difficulty appellees have in determining the procedure to be used in ascertaining what is the "average," it obviously means that the State, in a random selection from a catch, must ascertain that such random taking does not provide more than 68 specimens to the pound. The statute does not, and need not, specify how many pounds of shrimp must be weighed to determine the legality of the catch. Random selection is sufficient. The evidence actually shows that the State makes a random selection of three pounds before counting for the average specimens to the pound; they in turn allow the shrimper to make a random selection of three pounds, and finally the average number of specimens per pound is determined from this 6-pound random selection.
Appellees are concerned that there is no definition for "bait shrimp" and appear to be concerned for the sports fisherman who operates in open season, taking bait shrimp or shrimp for his own consumption. Bait shrimp, as is stated by Section 498, have no size limit. They may be very large or very small. During closed season the state limits the method for taking them, which in turn limits the quantity which may be taken. During open season, sports fishermen are allowed to take by trawl up to one *694 hundred pounds of salt water shrimp for the entire boat at any one time per day, as long as these shrimp of any size are used for bait or for their own consumption, and are not to enter into commerce.
Appellees are concerned that the statute is so overbroad that every one who possesses salt water shrimp at any time may be subject to prosecution for having under-sized shrimp in violation of Section 498. A reading of the group of statutesR.S. 56:491R.S. 56:526makes certain that it is limited to those who commercially take and possess salt water shrimp in the fresh state before processing and those sports fishermen who exceed the limitations placed upon them. Salt water shrimp in their fresh state, which are proposed to be regulated by the statute, of course, means fresh salt water shrimp with the heads on, for the purpose of determining the count per pound.
The statute which was declared unconstitutional by the lower court is a criminal statute with a penalty provided for its violation. Courts are required to construe such statutes restrictively. R.S. 14:3, United States v. Enmons, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973); State v. Gauthier, 263 La. 678, 269 So.2d 204 (1972); and State v. Patterson, 259 La. 508, 250 So.2d 721 (1971). Every statute is presumed to be constitutional and the court is bound to uphold the constitutionality of a statute when it is reasonably possible to do so. State v. Dooley, 261 La. 295, 259 So.2d 329 (1972); State v. Smith, 252 La. 636, 212 So.2d 410 (1968); and Everhardt v. City of New Orleans, 253 La. 285, 217 So.2d 400 (1968), app. dismissed 395 U.S. 212, 89 S.Ct. 1775, 23 L.Ed.2d 214.
We are of the opinion that the statute complained of adequately defines the specificity of the offense and fully gives notice in unambiguous language of the conduct denounced. The words used in the statute either are defined by that statute, or other statutes, or they have fixed a definite meaning understandable to persons of average intelligence. R.S. 14:3, Civil Code Art. 13 et seq. State v. Robertson, 241 La. 249, 128 So.2d 646 (1961); State v. Smith, supra; State v. Bonanno, 245 La. 1117, 163 So.2d 72 (1964), app. dismissed 380 U.S. 126, 85 S.Ct. 807, 13 L.Ed.2d 793; rehearing denied 380 U.S. 989, 85 S.Ct. 1350, 14 L.Ed.2d 283.
Our examination of the statute forces us into the conclusion that it is not violative of the Louisiana Constitution nor the United States Constitution. We declare R.S. 56:498 to be constitutional.
For the reasons assigned the judgment of the district court is reversed and the suit is dismissed at appellees' costs.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
Plaintiffs seek an injunction to restrain defendants from the arbitrary, capricious and discriminatory application of Section 498 of Title 56 of the Revised Statutes, the Louisiana Shrimp Count Law.
The trial judge found that the testimony of an expert marine biologist made it clear that there is no biological justification for a shrimp count law in this State. Its only justification is economics, for the law is designed to encourage the production of larger shrimp and to discourage the taking of small shrimp.
The basis for the different treatment of large and small shrimp rested, according to the finding, on the fact that large shrimp were worth more than the small shrimp. Additionally, when the Shrimp Count Law was enacted, no effective mechanical means for peeling small shrimp was in use and the small shrimp, which could not be peeled by hand commercially, were wasted.
In the meantime, for many years, the Count Law was not enforced. During this *695 time an economical and effective small shrimp, mechanical peeling process was invented. Large investments in plants and equipment followed to develop the processing and sale of small shrimp. An unfulfilled worldwide demand for this product was established over a period of time, and the demand continues to exist. Processing of dried shrimp, using the small variety, is also a segment of the industry carried on by some plaintiffs. The dry shrimp industry in the Terrebonne Parish area is the only such business in the western hemisphere. During the past twenty years canners, dryers, packers, frozen food, and other shrimp processors have established a multimillion dollar small shrimp industry. As a consequence a substantial segment of the Terrebonne Parish economy and a large number of its people depend upon the small shrimp.
In this area of Louisiana there are basically two types of shrimp-trawling operationsthe many small fishermen owning small vessels who travel inland waters; and the large vessel trawling the deeper waters of the Gulf of Mexico often traveling hundreds of miles seaward.
The trial court held that the Count Law favors the owners of the large vessel. This disparity of treatment of shrimp fishermen arises from economic considerations entirely unrelated to conservation.
No biological basis for the Shrimp Count Law exists or is claimed. This fact is undisputed and established by eminent marine biologists. According to this expert testimony, the female shrimp lays eggs in the gulf waters after which the small shrimp go inland to feed in the estuaries along the coast. In time as they grow larger they leave the quiet, shallow waters and return to the deep waters of the gulf where there is no regulation of size and no season affecting the shrimp catch. Thus enforcement of the Count Law will enable the larger seagoing boats plying the deep waters of the gulf to capture most of the shrimp. Smaller boats unable to go out into the open gulf would be left with virtually no shrimp for their nets since the Count Law will restrict their taking of small shrimp.
Since the law has an economic base only, its enforcement in favor of one economic group and against another is not evenhanded. Such enforcement is arbitrary and discriminatory and accordingly violates the constitution.
The point is emphasized by the trial judge's finding that the large boat owners were largely out of state corporations or individuals who have urged enforcement of the Count Law to the detriment of the local small boat fishermen who are local residents. As the trial judge found, the law seeks to enhance the economic position of large vessel owners at the expense of the small fisherman.
It is a violation of equal protection to favor large boat shrimping operations over small boat shrimping operations when no ascertainable state interest is served by the discrimination. No such interest has been shown here. People v. Weaver, 100 U. S. 539, 25 L.Ed. 705 (1880).
Moreover, the statute vests almost unlimited discretion in the enforcement officers in the method to be used in ascertaining the shrimp count. No guidelines are set out and no standards are prescribed.
A criminal statute, in order to be valid and enforceable, must define the offense so specifically and exactly that a person having ordinary understanding and intelligence will be able to determine from the language used whether his conduct is or is not denounced as an offense against the law. City of New Orleans v. Kiefer, 246 La. 305, 164 So.2d 336 (1964); State v. Bonanno, 245 La. 1117, 163 So.2d 72 (1964); State v. Murtes, 232 La. 486, 94 So.2d 446 (1957).
I respectfully dissent.