302 So.2d 909 (1974)
STATE of Louisiana
v.
Charlotte DEVALL.
No. 54595.
Supreme Court of Louisiana.
October 28, 1974.
Rehearing Denied November 27, 1974.
*910 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Warren J. Hebert, Special Prosecutor to Dist. Atty., for plaintiff-appellant.
John E. Miller, Baton Rouge, for defendant-appellee; Marilyn G. Haft, Melvin L. Wulf, New York City, American Civil Liberties Union, for amicus curiae.
SUMMERS, Justice.
This case comes to us as an appeal from a judgment of the trial court sustaining a motion to quash Louisiana's prostitution statute on the ground that it is unconstitutional for it denies women equal protection of the laws.
The statute provides:
"Prostitution is the practice by a female of indiscriminate sexual intercourse with males for compensation.
"Whoever commits the crime of prostitution shall be fined not more than one hundred dollars, or imprisoned for not more than six months, or both." La.R.S. 14:82.
According to the terms of the statute, the crime it reprobates can only be committed by a woman. A man practicing indiscriminate sexual intercourse with women for compensation does not commit this crime. The defendant here is a female charged with prostitution under the statute. She contends that there is no rational basis for punishing women and not men for engaging in indiscriminate sexual intercourse for compensation.
The proposition that a statutory enactment by the legislature is presumed to be constitutional requires no citation of authority. It is also fundamental that the burden is upon the party claiming the unconstitutionality *911 to show that the classification of the statute has no rational basis. State v. Brown, 288 So.2d 339 (La. 1974); Sevin v. Louisiana Wildlife and Fisheries Commission, 283 So.2d 690 (La.1973). Thus, when a court can reasonably do so, it will construe a statute so as to preserve its constitutionality. Pearce ex rel. Structural Pest Control Commission v. Sharbino, 254 La. 143, 223 So.2d 126 (1969).
The concept of equal protection of the laws has not been, and is not, susceptible to precise definition. No test has been formulated which is infallible or all-inclusive, each case must be decided as it arises. Puget Sound Power & Light Co. v. King County, 264 U.S. 22, 44 S.Ct. 261, 68 L.Ed. 541 (1923). It may be said, however, that generally the guarantee of equal protection of the laws means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons in like circumstances. Kentucky Finance Corp. v. Paramount Auto Exchange Corp., 262 U.S. 544, 43 S.Ct. 636, 67 L.Ed. 1112 (1922). The concept of equal protection applies to crimes and punishments, and mandates the invalidity of a statute which denies such protection by making a particular act a crime when committed by a person of one race but not when committed by a person of another race. In re Opinion of Justices, 207 Mass. 601, 94 N.E. 558 (1911).
In applying the Equal Protection Clause, however, it has been consistently recognized that the Fourteenth Amendment does not deny to the states the power to treat different classes of persons in different ways. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).
Discrimination between the sexes falls within the prohibition that states must accord equal protection to those within its jurisdiction. However, in matters in which sex is a material factor, a statute may make a distinction without violating the constitutional guarantee, if the classification is a natural and reasonable one. Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1947).
When an activity by women may, in the allowable legislative judgment, give rise to moral and social problems against which it should devise deterrents, the legislature may enact laws to accomplish such a purpose. Goesaert v. Cleary, ibid. Equal protection is not violated, therefore, by a statute which provides for the medical examination and detention of prostitutes, People ex rel. Kesselbaum v. Fox, 144 App.Div. 628, 129 N.Y.S. 657 (1911), or which makes it a criminal offense for a male person to live with, or to accept the earnings of, a prostitute. Zenner v. Graham, 34 Wash. 81, 74 P. 1058 (1904).
At the outset it must be noted that no evidence whatsoever has been introduced to support the defendant's position. With this bare record the court is called upon to presume that the purpose of the legislature in enacting the controverted statute was for some legitimate state purpose, and that the method chosen was relevant to the achievement of that purpose. However, given this presumption, the contention is that the classification in the Act is irrational, for the objects and purposes of the legislation could have been achieved just as well by making it a crime for men to engage in indiscriminate sexual intercourse for compensation. To make such conduct criminal when engaged in by women only, defendant argues, is the type legislative choice forbidden by the Equal Protection Clause.
To sustain this contention we must assume that the classification implicit in the statute is unreasonable. But this we may not do. The burden is upon the person claiming that the classification is unreasonable and irrational to support that contention with facts which will overcome the presumption of constitutionality.
Only argument is advanced to support defendant's contention. It is argued that *912 male prostitution is prevalent and constitutes a social evil detrimental to the public welfare just as does female prostitution. Aside from the fact that this record does not support the facts upon which this contention rests, there is nothing upon which this Court can rely to conclude that male prostitution is a social problem of any importance. A court may not suppose that male prostitution is a problem of such significance that the legislature should proscribe the practice as a crime. The Constitution does not and should not require the legislature, before attempting to regulate an existing practice which is detrimental to the public welfare, to regulate a practice which is not.
No decision has been called to our attention and our research failed to disclose any which require this Court to hold Louisiana's prostitution statute unconstitutional. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) and Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), upon which defendant relies, concerned facts and discrimination which are readily distinguishable from the instant case.
The Reed Case held that an Idaho statutory provision giving a mandatory preference for appointment as administrator to a male applicant over a female applicant otherwise equally qualified and within the same entitlement class of the Probate Code, violated equal protection. The objective of the statute to eliminate one class of contest was held not sufficient to justify discrimination against women.
The Frontiero Case is cited principally to support the contention that statutory classifications based upon sex are inherently suspect and must be subjected to close judicial scrutiny. However, the case cannot be considered authoritative on that question. No majority of the court subscribed to that view. In that case the Court did hold that a statute deprived a servicewoman of due process when it denied her dependency benefits for her husband, a question for a field from the one before this Court.
On the other hand, cases we consider persuasive have held similar statutes constitutional in other states.
In Wilson v. State, 278 N.E.2d 569 (1972), the Indiana Supreme Court upheld the state's prostitution statute against a claim that it applied to females only. To support its decision it adopted this statement of the applicable law:
"The classification as made is founded on substantial distinctions in the subject matter. It is reasonably designed to protect the morals and welfare of the public. It was deemed sufficient for this purpose when it was enacted. If the morals of the people of the state have changed in the meantime so as to require a more general classification, that matter is for the legislature to considernot for the courts."
See also State v. Mertes, 60 Wis.2d 414, 210 N.W.2d 741 (1973).
A more recent decision is Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974) where the constitutionality of a California disability insurance system which excluded benefits for normal pregnancy and delivery was held not to violate the equal protection clause. The court held that, consistent with the Equal Protection Clause, a state may take one step at a time in addressing phases of problems, and that "so long as the line drawn by the State is rationally supportable, the courts will not interpose their judgment as to the appropriate stopping point." Quoting from Dandrige v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) the court said: "The Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all."
To paraphrase a footnote in the Geduldig Case, absent a showing that distinctions involving prostitution are merely pretexts *913 designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to exclude male prostitution from the coverage of legislation on the reasonable basis that it does not constitute a social problem. Differences between the sexes does bear a rational relationship to the prohibition of prostitution by females.
For the reasons assigned, the judgment of the trial court is reversed, and the case is remanded to the trial court for further proceedings not inconsistent with the views expressed herein.
SANDERS, C. J., dissents with written reasons.
BARHAM, J., dissents for reasons assigned by the Chief Justice.
SANDERS, Chief Justice (dissenting).
A state has broad authority under its police power to enact legislation to protect the health, safety, and welfare of its people. Quite clearly, therefore, a state has the authority to enact restrictive legislation pertaining to prostitution, long regarded as a threat to the health and safety of the general public. L'Hote v. New Orleans, 177 U.S. 587, 20 S.Ct. 788, 44 L.Ed. 899 (1899); State v. McCormick, 142 La. 580, 77 So. 288 (1917); 73 C.J.S. Prostitution § 2, p. 226; 16 Am.Jur.2d, Prostitution, § 262, p. 514.
The State's authority to ban prostitution, however, is not at issue here. The issue is the constitutionality of a prostitution statute that places the heavy hand of the law upon women alone, while men who engage in the same conduct go free. The district court held that such a statute violated the Equal Protection Clause of the United States Constitution. I agree.
LSA-R.S. 14:82 provides:
"Prostitution is the practice by a female of indiscriminate sexual intercourse with males for compensation.
"Whoever commits the crime of prostitution shall be fined not more than one hundred dollars, or imprisoned for not more than six months, or both." (Italics ours).
Quite clearly, the criminal statute applies only to females. Louisiana is one of only five states which restricts its prostitution statute to the female sex.[1]
The defendant asserts that the statute is fatally defective, because it fails to penalize the male who pays for and receives the female's sexual services. Secondly, the defendant asserts that the statute is defective, because it fails to penalize the male who engages in sexual intercourse for compensation. I find merit in the second attack.
In Louisiana, both men and women are penalized for soliciting for prostitutes,[2] pandering,[3] letting premises for prostitution,[4] and enticing minors into prostitution.[5] Men who indiscriminately sell their sexual services, however, are not penalized for prostitution.
The State argues that there is a reasonable basis for the sexual classification here, since historically the sexual services of women have been in greater demand. The sale of sexual services by men, it is asserted, *914 has not created a social problem warranting legislative attention.
Although the sale of sexual services by men may not be as extensive as the sale of such services by women, the practice does exist.[6] Hence, the absence of the practice cannot serve as a basis for the restricted classification.
As noted by the trial judge, the law against prostitution has a three-fold purpose: preventing the spread of venereal disease; shielding citizens from annoyance; and controlling related crimes, such as illicit drugs, gambling, and organized crime.[7]
Male prostitution, like female prostitution, contributes to the evils which the statute was designed to prevent. Hence, classification by sex bears no real relation to the objectives of the statute.
On the constitutional issue, I have found no controlling decision of the United States Supreme Court. Recent decisions, however, demonstrate that the Court will invariably subject a statutory classification based on sex to judicial scrutiny. Unless the diverse treatment of the male and female rests upon some "ground of difference having a fair and substantial relation to the object of the legislation," the statutory classification is constitutionally defective. See Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974); Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); Reed v. Reed, 404 U. S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).
As noted in the majority opinion, state courts have upheld the constitutionality of the uni-sexual prostitution statutes in Wisconsin and Indiana. See State v. Mertes, 60 Wis.2d 414, 210 N.W.2d 741 (1973); Wilson v. State, Ind., 278 N.E.2d 569 (1972); cert. den. 408 U.S. 928, 92 S.Ct. 2494, 33 L.Ed.2d 341 (1972). These decisions, however, failed to take into account the vast changes in the social and legal status of women during the past decade. Nor did these decisions address themselves fully to the question of whether the sexual classification bore a substantial relationship to the legislative objective of the statute in question.
In other equal-protection cases, several courts have held statutes to be unconstitutional where such statutes provided for differential sentencing based upon the sex of the offender. See, e. g., Pennsylvania v. Stauffer, 214 Pa.Super. 113, 251 A.2d 718 (1969); Commonwealth v. Daniel, 430 Pa. 642, 243 A.2d 400 (1968); United States ex rel. Sumrell v. York, 288 F.Supp. 955 (U.S.D.Conn.1968).
In general, doctrinal writers support the view that prostitution statutes that criminalize women only are unconstitutional because of invidious sex discrimination. See, e. g., Rosenbleet and Pariente, The Prostitution of the Criminal Law, 11 Am.Crim.L.Rev. 373, 381-411 (1973); Kanowitz, Women and the Law: The Unfinished Revolution, p. 18 (1969); Brown, Emerson, Falk and Freedman, The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women, 80 Yale L.Journ. 871, 962-965 (1971); Eastwood, The Double Standard of Justice: Women's Rights Under the Constitution, 5 Val.Un.L.Rev. 281, 315 (1971).
I am unable to discern any rational justification for subjecting a female to criminal process for offering her body indiscriminately *915 for compensation, while allowing a male the freedom to engage in similar conduct without criminal consequences. Such conduct by a female poses no greater threat to the health, safety, or welfare of the community than such conduct by a male.
A statute is presumed to be constitutional. Here, however, the statute provides dissimilar treatment for males and females who are in the same situation. It arbitrarily discriminates against females.
For the reasons assigned, I respectfully dissent.
NOTES
[1] The other states are Alaska: Alaska Stat. § 11.40.210; Indiana: Burns' Ind.Ann.Stat. § 10-4220, IC 1971, XX-XX-X-X; North Dakota: N.D.Cent.Code § 12-22-15; and Wisconsin: Wis.Stat.Ann. § 944.30. The Alaska statute has been declared unconstitutional because of sex discrimination. See State v. Fields, 13 Cr.L.Rep. 2376 (1973). The prostitution statutes of the remaining 45 states apparently apply to both males and females. See Table, 11 Am.Crim.L.Rev. 422.
[2] LSA-R.S. 14:83.
[3] LSA-R.S. 14:84.
[4] LSA-R.S. 14:85.
[5] LSA-R.S. 14:86.
[6] It has been estimated that ten percent of this country's prostitutes are men and that the number is increasing. Rosenbleet and Pariente, The Prostitution of the Criminal Law, 11 Am.Crim.L.Rev. 373, 396 (1973). See also George, Legal, Medical and Pyschiatric Considerations in the Control of Prostitution, 60 Mich.L.Rev. 717, 722-724 (1962). This estimate apparently includes both men who sell their bodies to women and those who sell their bodies to other men. No opinion is expressed as to the accuracy of this estimate.
[7] See Davis, Prostitution, Contemporary Social Problems (Merton 1961) pp. 262, 279-280.