STATE of Missouri, Respondent,

v.

Jessie HENDRIX, Appellant.

No. KCD 26969.

Missouri Court of Appeals, Kansas City District.

March 3, 1975.

Philip H. Schwarz, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., K. Preston Dean, II, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

TURNAGE, Judge.

Defendant appeals his conviction of robbery in the first degree, Section 560.120 RSMo 1969, V.A.M.S., and sentence to five years in prison following a jury trial. Defendant does not question the sufficiency of the evidence, so a brief review of the facts will suffice to form the setting in which to consider defendant's claim of error on this appeal.

On February 23, 1973, Morris Williams, Jr., had a check in his possession payable to himself for $4,990.00, which he obtained from the settlement of a workmen's compensation claim. Williams took this check to Columbia National Bank in Kansas City to get it cashed. In talking with one of the bank officers concerning the cashing of the check, defendant decided to open a savings account with the bank and placed $2,000.00 in such account and took the balance of $2,990.00 in cash.

Williams went by the unemployment office where he picked up an unidentified person who asked for a ride home. While taking his new-found friend home, Williams stopped at a filling station and in the process of paying the bill, took his billfold out and believed his companion saw he had a large amount of cash. Williams proceeded to 24th and Forest where his friend departed and Williams went into a restaurant to get a sandwich. Williams obtained the sandwich and took it back to his car, which was parked on 24th Street between Forest and Troost in Kansas City.

Very shortly after Williams entered his car for the purpose of eating his sandwich, two men entered the car via the rear doors. One man grabbed him around the neck and told him not to turn around and the other man climbed over the seat and started wrestling with Williams for his pocketbook. Williams had a pistol under the floor mat of his car and immediately attempted to obtain this pistol while wrestling with the man seated beside him. The pistol was extracted from the floor but the man next to Williams got the pistol away from him and struck Williams on the forehead. This blow to the head was sufficient to cause Williams to begin bleeding very freely and to cause him to briefly lose consciousness. The man in the front seat obtained the pocketbook and stated to his companion in the rear seat, "I've got it, let's go".

The two men departed the car and Williams got out of the car in an attempt to chase them but fell to the sidewalk and because of his semi-conscious state was unable to make any pursuit.

At the same time, Officer David Nelson of the Kansas City Police Department was making his usual patrol eastbound on 23rd Street from Troost toward Forest, when he observed two males running. Tracy is one block from Forest. The two males appeared to be running fast and Officer Nelson proceeded in his car to a point near the corner of 24th and Tracy where he

stopped the two men. The officer noticed at this time both men had what appeared to be fresh blood on their clothing. The officer got out of his car and ascertained one of the men was the defendant, Jessie Hendrix, and the other was Harold Nelson. When the officer inquired as to the source of the blood, the two told him they had been jumped by some men at 22nd to 23rd Street on Troost, and Harold Nelson told him that he had hit one of the men who jumped them with a brick. Officer Nelson put out a call for assistance and Officer Comiskey arrived. Officer Nelson requested him to look in the vicinity of 23rd and Troost for any injured persons. After Officer Comiskey left, Officer Nelson heard a call over the radio for an ambulance to be sent to 24th and Forest, and observed Officer Comiskey immediately go in that direction rather than toward 23rd and Troost. Officer Comiskey found Williams sitting on the sidewalk near 24th and Forest bleeding very freely from the head. He promptly transmitted this information to Officer Nelson who thereupon placed defendant and Harold Nelson under arrest, gave them the Miranda warning and searched them. In searching defendant, he felt a large lump in the right front pocket and Hendrix then told him "there is $3,000.00 of my money there". In the meantime, other officers had arrived at the scene with Officer Nelson and the money was counted and placed in an evidence envelope, sealed and initialed by the officers. Officer Nelson also found $18.00 separate from the approximate $3,000.00 in defendant's pants pocket.

Defendant's explanation of the large sum of money was that he had won $3,700.00 in a dice game in which he and Harold Nelson had participated throughout the previous night and up until a very short time prior to his arrest.

While at the scene, a search was conducted of a vacant lot within a few feet of the point where defendant and Harold Nelson were arrested, and a gun, later identified by Williams as being the one taken from his car, was found lying on the ground. The gun had blood on the barrel.

At trial, the State introduced evidence showing the blood stains found on the clothing of defendant was type "O", which was Williams' type.

The defendant's story concerning his winnings in the dice game was that he had won $3,700.00 and had taken his winnings to a bank in the vicinity where he was arrested and had it changed into thirty-seven $100.00 bills. The money found in the defendant's pocket totaled $2,996.00, exclusive of the $18.00 found on him, and included nine $50.00 bills. Defendant was unable to give any explanation as to what happened to the balance of his winnings or the presence of the $50.00 bills in his pocket. He stoutly denied having disposed of any of his winnings prior to his arrest.

On this appeal, defendant raises two points, the first being error in the refusal of the trial court to suppress the identification made by Williams of defendant Hendrix because of an impermissibly suggestive identification procedure prior to trial. The trial court held a pre-trial hearing on this motion. The evidence at this hearing revealed that Williams was taken to the hospital after being found on the sidewalk where his head was bandaged and he was then taken to the police station to attend a line-up. Williams stated he was not aware of all that was going on after he left the hospital and although he was aware he was at the police station and there were men on a stage which he had been asked to view, he stated because of his condition he could not see any of the men on the stage. He simply told the officers at that time he was unable to identify anybody because of his inability to see. The next day, he returned to the police station and viewed another line-up. The evidence showed Williams was taken into a room, was given a seat, and asked to mark the number on a card of any person that he might observe in the line-up which he could identify as being the person who robbed him. There was no

evidence of any suggestion on the part of anyone that Williams should identify any particular person or that any particular person in the line-up was a suspect. Williams marked his card at this time indicating he identified defendant Hendrix as the man in the front seat who wrestled with him, struck him with the gun, and took his money.

■ Defendant's principal contention is that the line-up procedure was impermissibly suggestive because both defendant Hendrix and Harold Nelson appeared in both line-ups and appeared in the same position in both line-ups. Defendant relies on Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); Simmons v. United States, 390 U.S. 377, 88 S. Ct. 967, 19 L.Ed. 1247 (1968) and United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

The import of all of these decisions as well as the numerous other cases dealing with the identification procedure is that if the procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification", evidence so tainted must be excluded. It was stated in *Simmons* that each case must be considered on its own facts and evaluated in light of the totality of the surrounding circumstances.

In State v. Parker, 458 S.W.2d 241 (Mo.1970), in considering the totality of the surrounding circumstances it is stated: "[t]he rationale of such an approach necessarily demands consideration be given to (1) the presence of an independent basis of identification, (2) the absence of any suggestive influence by others, and (3) positive court room identification".

In this case all of such tests have been fully met. The independent identification was made by Williams on the basis of the head to head struggle in the front seat of his car at almost high noon. While Williams stated the struggle did not last over approximately fifteen seconds, he nevertheless did see and observe his assailant.

There was no evidence of any outside suggestion or any improper influence exerted on Williams by anyone to cause him to identify the defendant. The evidence concerning the line-up was that Williams was seated alone and no one else was near him and the men were shown and he marked his card. The fact that defendant and Harold Nelson both appeared in the two line-ups is completely irrelevant since Williams testified he could not see anyone at the first line-up because of his physical condition. This is further bolstered by the fact that while defendant Hendrix and Harold Nelson both appeared in both line-ups, Williams never did identify Harold Nelson as being one of his assailants. He stated he did not see the man in the back seat and, therefore, could not identify that person.

With reference to the third requirement, Williams made a positive in-court identification of the defendant and never wavered from that identification. On the circumstances here there was no impermissibly suggestive identification procedure used to obtain Williams' identification of the defendant. The court properly overruled defendant's motion to suppress the identification which Williams made of the defendant. See also State v. Boothe, 485 S.W.2d 11 (Mo. banc 1972) and State v. Carson, 501 S.W.2d 503 (Mo.App.1973).

Defendant's next point is stated in his brief as "the appellant was denied due process, and a fair trial, when the prosecutor was permitted to argue over appellant's objection what he, the prosecutor, personally believed were the only fair inferences from the testimony and that this was a 'horrible crime', and that in the prosecutor's judgment, certain testimony was true and the other testimony false".

■ In the argument portion under this point there is no reference whatever to the "horrible crime" mentioned in this point. For this reason, the allegation of that error is not preserved for appellate review since it appears without citation or author-

ity and no argument. State v. Orr, 493 S. W.2d 374 (Mo.App.1973).

The balance of the argument under this point consists of setting out a portion of the prosecutor's argument in which the prosecutor stated the jury either had to believe the defendant to be guilty or that the police officer stole money from the defendant and planted a gun at the place where he was arrested. The prosecutor then went on to state "my judgment of what the defendant testified to is that there is $700.-00 and some odd dollars missing and the guy that took it from him is David Nelson, patrolman". Objection to this argument was overruled. The prosecutor further stated the jury had to believe that the officer planted the gun. The defendant relies upon State v. Pope, 338 Mo. 919, 92 S.W. 2d 904 (1936) and State v. Burchett, 302 S.W.2d 9 (Mo.1957). Both of these cases recognize the general rule that the prosecutor may argue to the jury his opinion when it is apparent such opinion is based on the evidence. It is obvious the above quoted portions of the prosecutor's argument was based on the evidence. The prosecutor correctly pointed out the total opposition in the stories told by Williams and the defendant concerning the money, and then followed this to its logical conclusion in stating it would be necessary to believe the police officer had stolen money and planted a gun in order to believe the defendant's version. This argument was not error.

In the argument portion of his brief, the defendant also requests that parts of the prosecutor's argument be considered under the plain error rule, Rule 27.20, V.A.M.R. This because there was no objection to the argument at trial and the point has not otherwise been preserved for review.

The requirement of the plain error rule is that "there must be a sound, substantial manifestation . . . a strong, clear showing, that injustice or miscarriage of justice will result if the rule is not in-

voked". State v. Carpenter, 436 S.W.2d 748 (Mo.1969).

A review of the entire argument of the prosecutor reveals the complaint made by the defendant to be totally without merit and certainly would not fall under the requirements of the plain error rule. In addition, the defendant does not attempt to explain how and in what manner the argument will result in manifest injustice or miscarriage of justice and in fact does not even assert in his argument that it would so result. In that circumstance, the invocation of the plain error rule is not called for and would be in fact improper. State v. Maggitt, 517 S.W.2d 105 (Mo. banc 1974).

Finding no prejudicial error, the judgment is affirmed.

All concur.