**STATE of Missouri, Respondent,**

v.

**Willie COLEMAN, Appellant.**

**No. 36301.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

May 20, 1975.

28

Charles D. Kitchin, Public Defender, Thomas J. Prebil, James C. Jones, Asst. Public Defenders, St. Louis, for appellant.

John C. Danforth, Atty. Gen., K. Preston Dean, II, Scott A. Raisher, Asst. Attys. Gen., Jefferson City, for respondent.

NORWIN D. HOUSER, Special Judge.

Willie Coleman, convicted of Burglary Second Degree, § 560.070, RSMo 1969, V.A. M.S., and committed to the department of corrections for a period of 10 years, has appealed from the judgment of conviction.

The State's evidence showed that the building housing Alper's Jobbing Company at 1516 Dr. Martin Luther King Drive in the City of St. Louis was burglarized. The latch on the front door was forced open and part of the wood broken away. Six large cartons of shoes were taken from the building. At 12:40 a. m. two police officers observed appellant and another man exiting from an open door at Alper's, each carrying a large cardboard box. These two proceeded across the street and there placed the boxes in the doorway of a building on the north side of the Drive, directly across from the Alper building. After setting down the box he was carrying appellant turned around and "headed out back across the

street," walking. There were street lights in the area. The officers were dressed in full police uniform. Evidently the two men saw the police officers, for when appellant was halfway across the street on his way back he began running south, then west on the Drive. The other man set his box down in the doorway and began running west on the north side of the Drive. One of the officers shouted "Stop, police officer," but the two continued to flee. One officer pursued the man who was with appellant, and apprehended him. The other officer pursued appellant on foot to 16th Street, then east through the rear alley south of the Drive. There he found appellant crouched down in a small shed in the alley. State's Exhibit 7, a pair of shoes taken from one of the six large boxes, identified as having been taken from Alper's, was introduced in evidence. Mr. Alper testified that he gave neither appellant nor the other man permission to enter the building.

Appellant claims this evidence is circumstantial merely and is consistent with at least one reasonable hypothesis of his innocence; that it evidences nothing more than presence at the scene, opportunity to commit the crime and flight, which merely raises a suspicion of guilt but is insufficient evidence to authorize a conviction. Appellant suggests that the State's evidence is consistent with the following hypothesis of innocence (to which version of the facts appellant testified): that appellant left Bob's Restaurant, walked down the Drive, saw five young male blacks on the sidewalk very near Alper's, and near a number of boxes; that as appellant approached he was seen by the men, who grabbed small shoe boxes and fled; that two more men emerged from Alper's carrying large boxes which they placed in the doorway of the building across the street; that upon the appearance of the two police officers the men carrying the boxes ran and that appellant, frightened by the oncoming police car, also fled the scene.

The State's evidence is not insufficient as a matter of law to prove beyond a reasonable doubt that appellant committed burglary in the second degree. "This evidence clearly shows that insofar as the criminal agency of appellant is concerned this case was not based upon circumstantial evidence but upon direct eyewitness testimony," State v. Marler, 453 S.W.2d 953, 956[1] (Mo.1970), appellant having been seen exiting from the door of the store with stolen goods in his possession, and having been immediately pursued and apprehended in flight. Furthermore, evidence of burglary and recent, exclusive and unexplained possession of stolen property is sufficient to submit a burglary case. State v. Miller, 499 S.W.2d 496 (Mo.1973); State v. Robb, 439 S.W.2d 510, 513[3] (Mo.1969). If accused's explanation of such possession is disbelieved by the trier of the fact (as apparently it was in this case) accused's possession stands as if unexplained. State v. Clark, 438 S.W.2d 277 (Mo.1969); State v. Sallee, 436 S.W.2d 246, 250 (Mo.1969); State v. Durham, 367 S.W.2d 619 (Mo.1963). Other cases sustaining convictions of burglary under similar factual situations include State v. Mason, 506 S.W.2d 458 (Mo.App.1974); State v. Hawkins, 491 S.W.2d 342 (Mo. 1973); State v. Wheeler, 478 S.W.2d 326 (Mo.1972); State v. Marler, supra. The court did not err in overruling appellant's motion for judgment of acquittal at the close of the case and in submitting the case to the jury.

The trial court was not guilty of an abuse of discretion in denying appellant's motion for a mistrial, following the prosecutor's use of the word "arrest" during his cross-examination of appellant. The record follows:

"Q (By Mr. Kavanaugh): By the way, sir, in conclusion, you were convicted also were you not, you said you were convicted in 1959 of assault with intent to rob; is that right?

"A   That's correct.

"Q And you said that you were convicted in 1965 of three charges of assault with intent to kill; is that right?

"A That's correct.

"Q Is it not also true you were convicted in 1962 of carrying a gun and sentenced to six months in the city workhouse?

"A That's true.

"Q That's true. Is it not also true you were convicted in April of 1964 of assault with intent to kill?

"A that's true.

"Q So it is not just for the six prior felony convictions you have—

"A No, four.

"Q Sir?

"A Four, four.

"Q Well, there is an assault to rob, assault with intent to rob; is that right?

"A Two of those I never had no conviction on it.

"Q I am not talking about arrest I am talking about convictions?

"MR. PREBIL: I am going to object, and request to approach the bench.

"THE COURT: Sustained as to the term arrest.

(Whereupon the following proceedings were held at the bench out of the hearing of the jury):

"MR. PREBIL: This questioning has gotten a little bit out of hand. Now, for the first time he mentioned my client's arrest record. It is completely improper for him to mention that, and the sole intention in my mind is to prejudice the jury against my client. At this time I am going to request a mistrial.

"MR. KAVANAUGH: Before the Court makes any further ruling I would like the record to show, remind the Court rather, that this man said that he was not convicted, and it was at that time and only after that point that I told him I was not referring to arrest I was referring to convictions. This witness has showed some confusion.

"THE COURT: He has admitted it, all of them, so let's leave it at that."

■■ While the credibility of a witness may not be attacked by showing mere arrests, investigations or criminal charges which have not resulted in convictions, State v. Taylor, 498 S.W.2d 614 (Mo.App. 1973); State v. Elbert, 471 S.W.2d 170 (Mo. 1971), that rule is inapplicable under these circumstances, where the accused at first admitted that the 1962 and 1964 episodes were convictions and then promptly reversed himself and denied they were convictions. The prosecutor's use of the word "arrest" under these circumstances was inadvertent, and was invited—brought on by appellant's own testimony, and at most was harmless error. The use of the word in this context did not carry the sting or contaminate the verdict, as in cases where the prosecutor knowingly and intentionally engages in a direct inquiry with reference to a witness' prior arrests.

■ Appellant's defense (that the offense was not committed by appellant but by several other boys prior to the time appellant came upon the scene) was not a "special negative defense" within the meaning of the definition of that term in Notes on Use under MAI–CR 2.04, nor was it a "theory of innocence," requiring submission to the jury by appropriate instruction, whether requested or not, under the rulings in State v. Tate, 436 S.W.2d 716 (Mo.1969), and State v. Kinard, 245 S.W.2d 890 (Mo. 1952). An instruction to acquit upon a finding that appellant was not involved in breaking into the premises of Alper's and

that offense was committed by the five boys appellant mentioned was not part of the "law of the case" within the meaning of Rule 26.02(6), V.A.M.R., requiring instructions upon all questions of law necessary for the guidance of the jury. Appellant's testimony that he innocently came upon the scene of a burglary committed by others constitutes nothing but a "denial of the charge in its entirety," fitting precisely within the rule announced in State v. Banks, 491 S.W.2d 247, 248[2] (Mo.1973), that "A defense bottomed on evidence an accused had nothing whatever to do with the crime charged does not come within the connotation of the 'theory of innocence' principle * * *." Appellant's denial that he committed the crime "did not entitle him to a 'theory of innocence' instruction as a special defense to the charge." State v. Broomfield, 510 S.W.2d 843, 846[2] (Mo.App.1974).

■ The court gave Instruction No. 7 on flight. Under the law in force at the time of this trial on May 20–22, 1974 it was not error to give an instruction on flight when justified under the evidence. See State v. Ward, 518 S.W.2d 686 (Mo.App. 1975), and compare the cognate situation in State v. Martin, 515 S.W.2d 802, 804–805[4] (Mo.App.1974), in which reference is made to the proposition that there was no duty to instruct by MAI prior to the date when the MAI became operative. And see State v. Price, 513 S.W.2d 392, 396[8] (Mo.1974); State v. Durio, 512 S.W.2d 833, 835[4] (Mo. App.1974), and State v. Tindall, 496 S.W.2d 267, 271 (Mo.App.1973). (Since March 1, 1975 no flight instruction may be given, MAI–CR 5.40, but that rule was not in effect at the time this trial took place). Appellant argues that all of the State's evidence was circumstantial and if the State wished to instruct the jury on the effect of appellant's flight (which appellant concedes took place) the proper way would have been to give the general instruction on circumstantial evidence, MAI–CR 3.42; that under Rule 20.02(c) this applicable MAI–CR instruction should have been given to the exclusion of any other on the same subject. As indicated above, this is not a circumstantial evidence case. The argument is untenable.

■ Finally, appellant claims that in at least six different instances (the complaints ranging from A to F, both inclusive) the prosecutor in his argument to the jury made improper statements which were clearly prejudicial. Only appellant's complaints A and C were objected to at the trial, and only complaint A was mentioned in the motion for new trial. Complaints B through F were not properly preserved for appellate review, but we have examined each of these complaints on appellant's suggestion that they be considered and ruled upon as matters of plain error pursuant to Rule 27.20(c).

■ (A) In pleading with the jury not to return "this type of individual back on our streets" the prosecutor said, "The next time it is not going to be little Mr. Alper's Shoe—" whereupon he was interrupted by an objection that the argument was improper. The court sustained the objection and upon request of appellant instructed the jury to disregard the statement, but ignored appellant's request to discharge the jury and declare a mistrial. Appellant cites cases condemning inflammatory appeals calculated to arouse hostility towards the defendant by implanting fear in the jurors that if acquitted defendant will endanger their own safety or that of their families, contending that the argument implied that if the jury failed to convict appellant he would or might commit other crimes, possibly against members of the jury. Appellant reads into the argument implications that are not there. As in State v. Crawford, 478 S.W.2d 314, 320 (Mo.1972), wherein the prosecutor argued in similar vein, "[t]here was no suggestion of personal danger to the jurors or the members of their families if defendant was acquitted; nothing to arouse personal hostility on the part

of the jurors. We construe the statement as a permissible call for law enforcement and discouragement of this type of crime, and find the argument unexceptional." And see State v. Henderson, 510 S.W.2d 813, 823[22] (Mo.App.1974).

■ (B) The prosecutor, referring to the question of credibility of the witnesses, commented that "this man has been convicted of felonies six times. Six times." Shortly thereafter he repeated that "Here is a man who has been convicted six times before. * * *" Appellant claims that the second reference to prior convictions "does not reflect upon his credibility, but rather upon his character—what kind of a man he is"; that the argument was an attempt to establish appellant's "propensity for criminal conduct." Immediately preceding his references to previous convictions the prosecutor said, "The judge tells you to take into consideration the credibility of the witnesses," and "You decide the believability of every individual that hits that witness stand * * * you decide the weight it is to be given * * *."

Taking into consideration the entire argument we disagree with appellant's interpretation of the prosecutor's remarks, finding as we do that the argument in question went solely to the question of appellant's credibility.

■ (C) The prosecutor asked the jury whether the policemen, the judge and the prosecuting attorney had done their job, and then said, "Admittedly, I am no Morris Shenker * * * Admittedly, I am not a very fine trial attorney, but I have brought in here a set of facts," on which he was "naive enough" to believe that the jury was not going to turn this type of individual back on the streets. Appellant sees in these comments an effort to have the jury consider the relative skills of counsel by implying that the State was disadvantaged when compared to the defense, in an effort to

gain the sympathy of the jury, and argues that due to the vast resources of the State the most competent defense counsel can never overcome the built-in inequity and advantage the State enjoys, and therefore this argument was unfair. Again, appellant reads more into the statement than meets the eye. Another and more reasonable inference is that the prosecutor in effect was saying to the jury, "While I am not the best lawyer in the world I have brought you a set of facts on which I do not believe you are going to acquit." " * * * [A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." Donnelly v. DeChristoforo, 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974).

(D) In his final rebuttal argument the prosecutor said:

"They didn't find any tools on these individuals. Well, now, if you are a burglar, or if you are a car thief, and you are breaking into an automobile. Are you going to keep the tools on you. Not if you are a pro; you get rid of the tools right away. I can remember a story again on television. Somebody saw a man point a gun, bang! another man on this corner falls over and dies. The man who shoots the gun throws the gun in a sewer, man who shoots gun has no gun on his person, therefore, he walks free. Does that make sense? Because this man didn't have a crowbar, or screwdriver, or hammer, or tools on his person, he didn't do anything. It doesn't follow. The first thing you do is get rid of the thing."

■ Appellant excepts to this argument on the ground that it implies that appellant is a professional burglar, and is based on the authority of a fictitious television program seen by the prosecutor, thus in effect making the prosecutor a witness against appellant. This point is not well taken. In

the first place, the argument was invited. Defense counsel had argued that both police officers testified that when apprehended neither appellant nor the other man had tools in their possession, and that the door had been pried; that "it takes a tool to pry the door," and concluded by asking the jury, "What does that tell you?" The plain inference sought to be drawn was that since appellant had no tools on him he had not used tools and was not one of the burglars. The prosecutor was attempting to meet that argument by countering with the argument that a burglar will "get rid" of tools which, if found on his person, would incriminate him; that while an amateur might keep on his person the tools with which he performed a burglary or made an illegal entry into an automobile, a "pro" would dispose of such incriminating evidence, and the jury should conclude that appellant got rid of the tools rather than that he did not use tools. The prosecutor did not directly accuse appellant of being a professional burglar. The word "pro" was used in the sense of a skilled or experienced person. Compare the use of the term "professional job" in State v. Hornbeck, 492 S.W.2d 802, 808–809[15] (Mo.1973), upheld as a legitimate characterization of the burglary and not constituting an attack upon the defendant's character. Certainly appellant, who fled and was apprehended sans tools some distance from the scene, had an opportunity to get rid of burglar tools in the course of his flight. The reference to the television program was obviously made for illustrative purposes. No reasonable juror would consider the reference as evidence.

(E) At the end of his closing argument the prosecutor said:

"Now, I have told you briefly why there has been a case made here, a burglary in second degree is set out in the information filed in this case, and is set out in the instructions. Now, I would ask you to give Mr. Prebil, as I am sure you will, the same kind of attention you have given me, and ask him while he is speaking with you to go through these instructions with you, and have him tell you why not, why not, Mr. Prebil. Thank you, Your Honor."

■ Appellant argues that this argument was intended to impose upon appellant the burden of proving his innocence—to shift the burden of proof to the accused. That this is not the case seems clear enough. As we construe these remarks the prosecutor was telling the jury, in effect, "I've told you why a case of burglary second degree has been made, and now listen to the attorney for the defendant, whom I ask to tell you why a case of burglary has not been made." A prosecutor has a right to challenge the defense to demonstrate why the State has not made a case, without being held to have misstated the rule respecting the burden of proof. A prime function of defense counsel is to pick the State's case apart and persuade the jury that the accused is innocent—to demonstrate that the State has failed to meet its burden of proof.

■ (F) Finally, appellant urges that the cumulative effect of (A) through (E) was to deprive appellant of a fair and impartial trial. From a consideration of the record, briefs, and cases cited we are of the opinion that the court did not err by not sua sponte interrupting and stopping the prosecutor's argument, as appellant in retrospect suggests; that reversible error was not committed in connection with the argument; that no manifest injustice or miscarriage of justice has resulted, and that appellant's claim for relief under the plain error rule must be disallowed.

Affirmed.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.