STATE of Missouri, Respondent,

v.

Melvin Lee CRAWFORD, Appellant.

No. KCD 26795–26809.

Missouri Court of Appeals,
Kansas City District.

July 6, 1976.

Motion for Rehearing and/or Transfer
Denied Aug. 2, 1976.

Application to Transfer Denied
Sept. 13, 1976.

Richard J. Yocum, Asst. Public Defender, St. Joseph, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

On a change of venue from Clay County, a jury in the Buchanan County Circuit Court found Melvin Lee Crawford guilty of robbery in the first degree. The jury did not agree upon the punishment, and, after defendant's motion for new trial had been overruled, the court fixed the punishment at 30 years' imprisonment and entered judgment and sentence accordingly. This appeal followed.

On July 8, 1972, at around 9:20 A.M., two men entered Braun's Jewelry on the square in Liberty, Missouri. After asking the operator of the store, Melford G. Braun, to see some diamonds, one of the "customers," identified by Braun as appellant, drew a

pistol and ordered Braun to lie on the floor. The robbers took various items of jewelry and cash and left after tying Braun's hands. Braun sounded an alarm and police came to the scene. Fingerprints were found on the counter, identified as identical with those of Crawford.

Five points of error are asserted on this appeal. The first complains of the trial court's failure to order a mistrial upon the request of defendant for the reason that prospective jurors had seen the defendant when he was brought into the courtroom in handcuffs.

Except for two veniremen, voir dire of the panel had been completed before lunch on the first day of the trial. When proceedings resumed following the luncheon recess, defense counsel moved for a mistrial, stating:

"At this point the defendant would move for a mistrial for the reason that when the Sheriff returned the defendant from lunch to the courtroom in the presence of at least four jurors that I saw, and in fact, in front of most of the jurors who were inside the courtroom, he brought him in in handcuffs, led him into the courtroom in handcuffs, and in front of the jury and visible to them, removed the handcuffs from him. And for that reason we feel that he has been prejudiced; that he has been deprived of a constitutional right, and we would move for a mistrial."

The court took the motion under advisement and upon completion of the voir dire and selection of the jury, the court stated:

Now, ladies and gentlemen: It is very important in the trial of a law suit, whether it is a civil or criminal case, both, that the jurors must make up their minds about the facts; that it is their duty to determine the facts in the case, and they must decide those facts solely on what they hear from the witness stand and what occurs during the trial.

"The lawyers and the Judge and the witnesses and parties and staff of the court have to be exceptionally careful to try and not do anything which would in any way

indicate that the defendant is guilty or not guilty, or in a civil case, that the plaintiff should win or defendant should win. And we try very hard not to have anything happen which might in any way indicate the defendant is guilty or not guilty.

"Even the attorneys, themselves, are not permitted to express their own personal opinion, only their opinion of what the evidence is. However, sometimes things do happen, and it may be that something like that happened today. So what I would like to ask you—This occurred just before, shortly after 12:30, before most of you were in the courtroom—but I want to ask you, and I don't want you to relate to me what you saw or how it affected you, but I want to ask if any of you noticed or recall now seeing the defendant come into the courtroom this second time during the noon hour, just before we started the proceedings this afternoon? Do any of you recall seeing the defendant come into the courtroom?

"(No response.)

"Well, Mr. Jones, you weren't even in the courtroom. Maybe none of you were, but there is no one here on the panel that recalls seeing the defendant come into the courtroom just this while ago? I am not talking about this morning early; I am talking about just recently?

"(No response.)"

Counsel renewed his motion for mistrial and it was overruled.

■ On this appeal, appellant contends that the trial court's action was an abuse of discretion, because, on the facts before it, the trial court could not say beyond a reasonable doubt that defendant's Sixth and Fourteenth Amendment rights to a fair trial had not been prejudiced by exposing the defendant to the jury in handcuffs.

■ Even if appellant's assumption that some jurors did see the appellant but failed to acknowledge that they did so is accepted, the circumstances were not such as to make the trial court's refusal of a mistrial error. Numerous cases have recognized that a brief, inadvertent exposure to the jury of a handcuffed defendant while he is being tak-

en from one place to another does not deprive the defendant of a fair trial. *State v. Beal,* 470 S.W.2d 509, 515–516[8, 9] (Mo. banc 1971); *State v. Fields,* 487 S.W.2d 560, 561[1] (Mo.1972); *State v. Warriner,* 506 S.W.2d 103, 104[1] (Mo.App.1974); *State v. Neely,* 524 S.W.2d 886 (Mo.App.1975). Here, the defendant was being returned to the courtroom following the noon recess. There is no complaint that the handcuffs were not promptly removed and there is no charge that appellant was manacled while the trial was in progress.

■ The trial court is not to be faulted for the inquiry which it undertook following defense counsel's objection. This action was a sound exercise of discretion for the purpose of determining whether or not the incident had made any impression upon the jurors. There is no cause to speculate, as counsel does on this appeal, that the inquiry might have caused a later recollection on the part of a juror which would have affected his consideration of the case. There is no evidentiary basis for such speculation.

This assignment of error is without merit.

■ Appellant next complains of the following remark of the prosecutor at the close of his opening statement:

"Now, after we show you the proof that I have told you about, we will ask you to return a verdict of guilty and assess punishment accordingly."

Appellant contends that this remark was argumentative and beyond the scope of an opening statement as outlined in § 546.070, RSMo 1969, and thus prejudiced his right to a fair trial.

Having made no objection to the statement when made, appellant here relies upon the plain error rule (Rule 27.20(c)) in urging this claim of error. Appellant cites no authority in point which would warrant the conclusion that had he objected at the time of the statement and his objection been overruled, the action of the trial court would have been error. No reason appears for invocation of the plain error rule and the absence of objection at the trial precludes this claim of error.

Appellant next complains that the trial court erred in holding that a statement he made to police was voluntary and in admitting the statement into evidence.

A preliminary hearing was held by the trial court prior to the admission of the statement in evidence.

Appellant was arrested by Kansas City police on a warrant charging him with this robbery. On August 3, 1972, he was interrogated at the Kansas City Police Department by two Liberty policemen, John Lewman and Arthur Chevalier. According to Lewman, appellant did not sign a waiver of rights form immediately, and he conversed with appellant for some thirty minutes in an effort to "break the barrier down" between the officer and appellant. Appellant did sign a waiver form. He refused to make a written statement but did tell the officer: "I know you have evidence against me so I might as well tell you I done the robbery, but I am not involving anybody else." Officer Chevalier's testimony was to the same effect.

The appellant testified that he was given no Miranda warning before he was taken to Liberty and denied that he had signed the waiver form on August 3. He testified that the interrogating officers told him that "someone had given information" on the robbery and that the officer told him that they had been following him for a long period of time and knew of his activities.

Officer Lewman denied that any such statement was made to appellant and Officer Chevalier recalled no such remarks.

The trial court found beyond a reasonable doubt that Miranda warnings had been given appellant and that the statement was voluntarily given. Officer Lewman then testified before the jury to the oral statement of appellant.

On this appeal, appellant contends that viewing the totality of the circumstances the trial court's conclusion that the statement was voluntary was erroneous.

■ The testimony of the officers made a prima facie showing of the volun-

tariness of appellant's statement. *State v. Garrett,* 510 S.W.2d 853, 854–855[2–4] (Mo. App.1974). Appellant in his testimony made no complaint of coercive tactics on the part of the interrogating officers. He made no complaint of physical abuse. He made no claim that the interrogation proceeded despite his invocation of a right to remain silent. The trial court was not obliged to accept appellant's denial that he had received the Miranda warnings. The questions propounded to appellant about statements by others about the crime and his responses did not show that the police had told him that an accomplice or informer had implicated appellant. The officers testified that they did tell appellant that Braun had identified him from mug shots, a statement not demonstrated to have been unwarranted.

■ In support of his claim that the trial court's ruling was erroneous, appellant would draw inferences unfavorable to the trial court's ruling from the fact that the officers disagreed as to the number of police present at the interrogation—Lewman said two and Chevalier said a Kansas City officer also was present; the setting of the interrogation—"a small cubicle" at police headquarters; Lewman's testimony that appellant told him he would talk to him because he was one of the few policemen who had treated appellant "like a man," an indication, according to appellant that he had been maltreated by Kansas City officers; appellant's reluctance to sign the waiver (he does not here contend that he did not do so); and his reluctance to give a written statement.

These were circumstances to be considered by the trial court and weighed against the affirmative testimony of the police officers to the voluntariness of the statement, but such circumstances do not require the conclusion that the statement was in law and fact involuntary. Therefore the trial court's conclusion was not erroneous. *State v. Garrett,* supra.

■ Appellant's next assignment of error is based upon the trial court's failure to admonish the jury, as required by § 546.230, RSMo 1969, upon recesses and adjournment of the court. The trial lasted into the second day. There were recesses during the first day at which no admonition was given and none was given at the overnight adjournment. No objection was made to this procedure at any time, either during trial or in appellant's motion for new trial. Appellant here relies upon the plain error rule. Rule 27.20(c).

The failure to object at any stage of the trial precludes consideration of this claim under ordinary rules of appellate review. The absence of any showing that the trial court's failure to give the required admonition was prejudicial to appellant precludes reliance upon the plain error rule. *Morrow v. United States,* 408 F.2d 1390, 1391–1392[4] [5] (8th Cir. 1969); *United States v. Carter,* 430 F.2d 1278, 1279–1280[1] (10th Cir. 1970). See *State v. Underwood,* 530 S.W.2d 261, 264–265[8] (9) (Mo.App.1975).

Finally, relying primarily upon *State v. Heinrich,* 492 S.W.2d 109 (Mo.App.1973), appellant contends that the unobjected to remarks of the prosecutor in his closing argument were so prejudicial and inflammatory as to entitle him to relief under the plain error rule.

■ The major portion of the prosecutor's argument was devoted to punishment. He asked that a 60-year sentence be imposed. In the course of such argument, he did ask that appellant be " * * * put * * * so he cannot function in society * * *. * * * I'm asking * * * sixty years so that he won't function in society again. So that he won't pull a gun on the Brauns or any citizen in Clay County." This particular line of argument was improper. A prosecutor may not argue for punishment to prevent the defendant on trial from committing further crimes. *State v. Raspberry,* 452 S.W.2d 169, 172[2–6] (Mo.1970). This was, however, an isolated remark. The argument was not made repetitiously, as was the case in *Heinrich,* supra. Standing alone, the remark would not call for relief under the plain error rule.

**638**

*State v. Henderson,* 510 S.W.2d 813, 823[21, 22] (Mo.App.1974).

■ Appellant contends that the argument inferred that he was a member of the Kansas City underworld. Reference was made to the Kansas City underworld, but the prosecutor was arguing for a severe punishment as a deterrent to that group. He did not place appellant in such category. He did state, beyond the record, that appellant was from Kansas City, but this unobjected to remark was not so beyond the bounds of propriety as to produce a miscarriage of justice.

■ Appellant also argues that some remarks of the prosecutor amounted to "a thinly disguised endeavor to point out the fact that defendant is Black." This complaint is based upon a strained construction of the remarks in question and is an unwarranted view of the thrust of the argument.

Contrary to the situation in *Heinrich,* the prosecutor did not "personalize" the jury. He did not attempt to "arouse * * * personal hostility toward or personal fear of the defendant." *State v. Heinrich,* supra, 492 S.W.2d at 114.

Some of the remarks of the prosecutor were subject to correction on proper objection, but no objection was interposed. Certainly the argument was not so grossly prejudicial and inflammatory, as was the case in *Heinrich,* as to call for sua sponte action on the part of the court in order to preserve the defendant's right to a fair trial. There has been no such manifest injustice or no miscarriage of justice in this case as to call for application of the plain error rule. *State v. Hendrix,* 520 S.W.2d 701, 705[4] (5) (Mo.App.1975); *State v. Coleman,* 524 S.W.2d 27, 32–33[13]–[15] (Mo. App.1975).

Judgment affirmed.

All concur.