STATE of Missouri, Respondent,

v.

Chris COWANS, Appellant.

No. WD 32603.

Missouri Court of Appeals,
Western District.

Dec. 7, 1982.

Donald G. Stouffer, Marshall, for appellant.

John Ashcroft, Atty. Gen., Priscilla F. Gunn, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and PRITCHARD and DIXON, JJ.

PRITCHARD, Judge.

A jury found appellant guilty of these offenses and fixed his punishment thereon as follows: First degree burglary (§ 569.-160 RSMo 1978), seven years; Sodomy (§ 566.060), thirteen years; and Rape (§ 566.030), fifteen years. Upon a finding of his being a persistent and dangerous offender, the trial court enhanced the punishments for the burglary to twenty-five years; for the rape, twenty-five years, to be served consecutively; and for the sodomy, twenty-five years, to be served concurrently with the first two sentences, in the Division of Corrections. The sufficiency of the evidence is not questioned.

The first point is that the trial court erred in overruling appellant's motion to dismiss upon the ground that he was not brought to trial within 180 days after his plea of not guilty upon arraignment under § 545.780.

■ Appellant was bound over for trial by an associate circuit judge on November 9, 1979, to the Circuit Court of Cooper County, Missouri. Arraignment was had in the circuit court on November 13, 1979, at which time appellant entered a plea of not guilty. Defendant then made an oral motion to remand the preliminary hearing on the issue of persistent offender and for discharge upon which the court requested suggestions and passed the case to November 26, 1979, on which date the case was further passed by agreement of counsel. On December 3, 1979, appellant, by counsel, filed these motions: "Request for a Gag Order"; "Request to Close Court File and to not Allow Public to Attend Preliminary Hearing or other Proceedings Herein"; "Motion to Suppress Lineup Identification Evidence"; "Motion for Suppress Statement of Defendant"; "Motion to Disqualify Prosecuting Attorney"; "Motion to Remand"; and "Motion for Change of Venue". On January 28, 1980, the Motion for Change of Venue was sustained and by agreement of counsel, the case was transferred to the Circuit Court of Saline County, the file being received by the clerk of that court on February 6, 1980.

On February 25, 1980, appellant filed an additional motion to require an election. On April 25, 1980, motions were set for hearing on July 2, 1980, and the case was set for trial on July 24, 1980. On June 6, 1980, appellant's attorney, Cronan, was permitted to withdraw; the trial court (Judge Bellamy) disqualified himself, and Judge Belt was assigned by the Supreme Court to the case on June 20, 1980. On July 1, 1980, appellant's present counsel was appointed. On July 23, 1980, all pretrial motions were heard and taken under advisement, and on that date, appellant filed a request for mental examination which was sustained, and the report thereon from the Fulton State Hospital was received on October 16, 1980. On October 28, 1980, all of appellant's motions were overruled. Trial began on December 8, 1980, at which time appellant announced that he did not intend to rely on the defense of mental defect or incapacity. It appears that from the time of arraignment, 390 days elapsed to the date the trial began.

The above recitation is set forth merely for the purpose of showing the pretrial occurrences. Many of the statutory excludable occurrences run concurrently with the time that must be excludable under § 545.-780, that is, 3(1)(c), the delay resulting from hearings on pretrial motions. That this matter as an excludable period of time is ruled by *State v. Ratliff*, 633 S.W.2d 267 (Mo.App.1982), where Ratliff's pretrial motions filed by him between February 1 and

February 21, 1980, lay on record without ruling until April 17, 1980. It was held that there was no proof on Ratliff's part, as was his burden under § 545.780.5 [*State v. Richmond,* 611 S.W.2d 351 (Mo.App.1980)], that any delay in ruling the motions was occasioned by the state, and hence the time that the motions were pending was excludable under the statute. Of importance also is the fact here, analogously noted at page 269 of the *Ratliff* case, that the case could not go to trial until appellant's pretrial motions had been disposed which was on October 28, 1980. To that date from the date of arraignment, November 13, 1979, amounts to about 345 days, which, under the *Ratliff* case, are excludable. Obviously then, appellant was brought to trial within the statutory time. The trial court noted the pendency of appellant's motions (the records of which were before it) in its memorandum as a reason for declining to dismiss the case, thus complying with § 545.780.5. It is unnecessary to consider other excludable periods of time, such as change of venue, self-disqualification of Judge Bellamy, withdrawal of counsel, and time for a mental examination. Appellant's first point is ruled against him.

 Appellant in his second point asserts error in the trial court's denial of his motion for mistrial because he was displayed before the jury panel in handcuffs, escorted by two police officers, "which action could only serve to prejudice the minds of the jurors against the appellant." The record shows this to have happened: Before the trial began, appellant was brought into the courtroom in handcuffs. There was a discussion between the trial court and appellant as to whether he would create a disturbance during trial and upon his assurance that he would not, the court said that the handcuffs would be taken off. Appellant's counsel then moved for mistrial on the ground that he was displayed in front of the jury panel in handcuffs. The court inquired of the sheriff as to how many jurors were present when the motion for mistrial was made, to which he first responded that there were about eight, the rest being in the hall. The sheriff was directed to take them to the jury room, that they would be the only ones who could have observed appellant in handcuffs, and they would be seated last. Then the court stated that only three jurors were in the courtroom who could have seen appellant in handcuffs and those three were being taken to the jury room and left there and the voir dire would proceed with the others. Counsel requested leave to present evidence on the motion and called attorney Stafford who testified that he observed appellant being brought up the stairs in handcuffs by a Highway Patrolman and a Deputy Sheriff. Stafford saw the prospective jurors sitting on seats or benches in front of Mr. Peterson's office just outside the door of the circuit courtroom next to the balcony railing. He noticed great actions from all of them, that all of them seemed to observe it and lips were moving from many different people as if they were talking to each other. On cross-examination, Stafford acknowledged that he could hear no words, but he just heard buzzing, whispering muzzled sounds, and saw lips moving. He thought their conversation was sparked by appellant's appearance before them.

At most, the foregoing facts show that there were but brief periods of time that any members of the jury panel observed appellant in handcuffs: first, when he was brought up the stairs by the officers and past members of the panel seated in the hallway outside the courtroom; and second, when he was before the court and interrogated as to his intention not to create a disturbance during trial, at which time there were three venirepersons present in the courtroom as the trial court found. Those three persons were directed by the court to be taken to the jury room and kept there, and it does not appear that they were interrogated on the voir dire examination or that they were selected for jury service. In the circumstances, appellant could not have been prejudiced. See *State v. Crawford,* 539 S.W.2d 633, 635–636 (Mo.App. 1976), where the defendant, in handcuffs, was being returned to the courtroom after a noon recess. The court said, page 635[2],

"Numerous cases have recognized that a brief, inadvertent exposure to the jury of a handcuffed defendant while he is being taken from one place to another does not deprive the defendant of a fair trial. (Citing cases.)" Quite apparently, appellant was not manacled during the trial. The action of the trial court in overruling the motion for a mistrial was but an exercise of sound discretion for the purpose of determining whether or not the incidents had made any (adverse) impression upon the jury panel. *Crawford,* supra, page 636[3]. The second point is overruled.

■ By his third point, appellant asserts that the trial court erred in not striking the jury panel and in not granting his challenge for cause as to 34 prospective jurors because each admitted having referred to negroes as "niggers", "coons", or some other name, thereby revealing a bias against appellant resulting in a denial to trial by a fair and impartial jury. On voir dire examination, appellant's counsel asked: "I want you to think back over the past two (2) years. And I want you to think back over experiences over your conversations over the jokes you've heard. How many people here over the past two (2) years a black man—heard a black man referred to as something other than a negro? A nigger, a coon, or some other name. Let me ask this question. How many people have not? Honestly. I can't tell you how important it is. I couldn't raise my hand on this question. I'm ashamed of that, but it's true. How many people have not? Would you please raise your hand? Have not referred to a member of the negro race, black man, by another name. Either a joke or in conversation. Mr. Page, Mrs. Caton, Mrs. Peuster, Mrs. Lamb, Mrs. Meinershagen, Mrs. Little, Mrs. Maxted." [Apparently, these persons had not used a name other than negro, and the remainder of the panel had.]

Other inquiries were made of the jury panel as to the possibility of prejudice because of appellant's race. It was brought out that only appellant and a police chief present in the courtroom were black. The panel was asked how many of them would like their daughter to marry a black man. Apparently no hands were raised. Then, the question was put whether they would not like for their daughter to marry a doctor. Several hands were raised. Then, they were asked if the doctor were black, would they still want their daughter to marry him. One venireman answered that it would be her choice, but it would bother him some. The panel was asked how many of the members attended segregated schools. The panel was interrogated as to whether it would make any difference that appellant was black and the victim of the rape charge was white. Some answered that it would, and they were excused for cause.

The matter of any possible racial prejudice was thoroughly gone into by counsel. Note that no venireperson who was asked whether the fact that they had heard or referred to black people as "niggers" or "coons" were not asked if that fact would prevent them from listening to the evidence and deciding the case thereon and upon the instructions of the court. Thus, the trial court could conclude that no issue of racial prejudice was presented by the mere hearing or using of these words. The trial court, from its observation of the demeanor of venirepersons, an interpretation of answers to questions, is in a better position to determine whether those persons could render a fair and impartial verdict, if chosen, than this court. In this matter, the trial court is possessed of a wide discretion. *State v. Cuckovich,* 485 S.W.2d 16, 22 (Mo. banc 1972); *State v. Royal,* 610 S.W.2d 946, 950[6, 7] (Mo. banc 1981). It appears here that no person who was chosen to serve on the jury had expressed any doubt as to the ability to render a fair and impartial verdict. The third point is overruled.

■ In his last point, appellant says that the state erroneously argued in closing argument that appellant had a burden of proof. The argument complained of and objected to is this: "You'll notice I will get excited some times and make mistakes, *but you hold each of us in the case to prove that*

*burden* and by using the evidence in the instructions in this cause." [Italics added.] The italicized portion of the statement could have been susceptible to the interpretation that appellant places upon it, but on appellant's objection and request, the court promptly admonished the jury: "Ladies and gentlemen of the jury, you will disregard the statement that Mr. Wooldridge, when he stated or referred to the burden that each party had. The defendant has no burden of proof in the case here today. The State bears the entire burden." Thus, any possible error or prejudice was cured. *State v. Dunn,* 615 S.W.2d 543, 548 (Mo. App.1981); *State v. Hoskins,* 569 S.W.2d 235, 236[1, 2] (Mo.App.1978). Point IV is overruled.

The judgment is affirmed.

All concur.